**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Edmund P. ROSSY, Jr., Defendant–
Appellant.**

**No. 91–1539.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 6, 1991.

Decided Jan. 8, 1992.

Certiorari Denied Feb. 24, 1992.

See 112 S.Ct. 1240.

Stephen J. Liccione, Asst. U.S. Atty. (argued), Milwaukee, Wis., for plaintiff-appellee.

William S. Mautner (argued), Atinsky, Kahn, Sicula & Teper, Milwaukee, Wis., for defendant-appellant.

Before CUDAHY and FLAUM, Circuit Judges, and ROSZKOWSKI, Senior District Judge.[1]

CUDAHY, Circuit Judge.

Edmund P. Rossy, Jr. was convicted of conspiracy to possess with intent to distribute cocaine, possession with intent to distribute cocaine and travel in interstate commerce to promote drug trafficking. The district court sentenced Rossy under the Sentencing Guidelines to 121 months on each of the first two counts and 60 months on the third count, all to run concurrently. Rossy challenges both the conviction and the sentences on a number of grounds. We affirm.

I

Rossy argues that his conviction should be reversed and that he should receive a new trial for two reasons. First, he contends that the district court committed reversible error by refusing to give one portion of the Seventh Circuit's pattern jury instruction on conspiracy. Second, Rossy claims that the prosecution's failure to disclose certain witness statements prior to trial deprived him of a fair trial. We find both of these arguments to be without merit.

A. *Jury Instructions*

■ The district court refused to include in its instructions to the jury the following portion of the Seventh Circuit's pattern jury instruction on conspiracy: "In determining whether the defendant became a member of the conspiracy you may consider only the acts and statements of that particular defendant." Fed.Crim.J.I. § 5.11 (1980). In *United States v. de Ortiz*, 907 F.2d 629 (7th Cir.1990) (en banc),

this court held that the pattern instruction was contrary to the Supreme Court's decision in *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). Rossy disagrees with that conclusion. He asserts that *Bourjaily* goes only so far as to allow co-conspirators' statements to be used in determining whether a conspiracy exists, but does not allow a defendant to be found a member of the conspiracy based on such statements. He asks us to reconsider our ruling in *de Ortiz*. We see no good reason to do so, and Rossy offers none. Hence, the district court properly rejected the proposed instruction.

B. *Nondisclosure of Witness Statements*

Rossy also contends that he is entitled to a new trial because the prosecution failed to disclose certain evidence prior to trial. Specifically, Rossy claims that the government was required to disclose the results of a search by DEA Agent Melick for Rossy's alleged principal and certain statements of witnesses Kathy and Michael Strzelecki.

■ Agent Melick testified that he traveled to New York in search of a Mr. Meira, for whom Rossy allegedly worked, but that the Meira whom he found living at the address given him by government witness Kevin Keller turned out to be the wrong man. Rossy argues that he could have used this information to impeach Keller's credibility and that therefore the government was required to disclose it prior to trial under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment." *Id.* at 87, 83 S.Ct. at 1196–97. Impeachment evidence may fall within the *Brady* rule. *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985); *United States v.*

---

**1.** Honorable Stanley J. Roszkowski, Senior District Judge of the United States District Court for the Northern District of Illinois, sitting by designation.

*Agurs,* 427 U.S. 97, 112–14, 96 S.Ct. 2392, 2401–02, 49 L.Ed.2d 342 (1976). However, evidence is material under *Brady* "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383; *see also United States v. Phillips,* 854 F.2d 273, 276 (7th Cir.1988). The district court, in the course of denying Rossy's motion for a new trial, found that Agent Melick's unsuccessful search for Meira "provides little or no evidence concerning defendant's claim of innocence or the credibility of government witnesses." Order at 5 (Jan. 8, 1991). We agree; the fact that there was a different Meira living at the address given by Keller does not necessarily prove that Keller's testimony as to his dealings with Rossy was not credible. More important, there is no reasonable probability that earlier disclosure of this evidence would have resulted in a different outcome. For one thing, Keller was not the sole prosecution witness: both the Strzeleckis and Cinquegrani testified to various cocaine transactions in which Rossy had been involved. Further, the results of Agent Melick's search *were* before the jury. As Rossy notes, he challenged Keller's credibility and the existence of the alleged Mr. Meira throughout the trial. Rossy's counsel explicitly argued to the jury in closing that Agent Melick's failed search demonstrated that Keller was not credible. Tr. Vol. 7, pp. 978–79. The jury was not convinced. It is highly unlikely that further cross-examination of Keller based on Agent Melick's report would have changed this result.

■ Rossy's claims as to the statements of Kathy and Michael Strzelecki are even less meritorious. Kathy Strzelecki testified that Rossy's codefendant, Craig Agrell, told Kevin Keller that Rossy "was trying to take over Kevin's area." Tr. at 251. Kathy Strzelecki's husband, Michael, testified that Rossy helped Keller cut open a package of cocaine that Keller and Rossy had brought to Michael's house, and that

he saw Rossy count the money that Michael paid for the cocaine. Rossy argues that the government's failure to disclose this evidence prior to trial violated Federal Rule of Criminal Procedure 16(a)(1)(A), which provides that a defendant is entitled to pre-trial discovery of any of his own statements in the possession of the government. It is not at all clear, however, that the prosecution even violated this rule; neither of the Strzeleckis testified to any "statement" of Rossy and the prosecution apparently was not "in possession" of the testimony to which Rossy objects.[2] More important, even if the government had violated the discovery rule, Rossy offers no authority for the claim that such a violation would be grounds for a new trial. Due process requires only that the prosecution disclose evidence that is "favorable to an accused." *See Brady,* 373 U.S. at 87, 83 S.Ct. at 1196. Clearly, neither of the Strzelecki statements qualifies as such. Thus the government's "failure" to disclose them, if error at all, was not reversible error.

## II

Rossy also challenges the sentences imposed by the district court. He argues, first, that the Sentencing Guidelines should not have been applied at all because the government failed to prove that his activities continued beyond November 1, 1987, the effective date of the Guidelines. Second, Rossy claims that the district court erred in basing his sentence on its determination that the conspiracy involved five or more kilos of cocaine because the evidence does not support such a conclusion. Finally, Rossy contends that he should have received a two-level decrease in his offense level as a "minor participant" in the conspiracy, and that the court should have granted him a downward departure from the Guideline range based on a variety of mitigating circumstances.

---

**2.** Kathy's testimony was a surprise to both sides; Michael's testimony did not appear in his written statement.

A. *Applicability of Sentencing Guidelines*

The Sentencing Guidelines promulgated by the United States Sentencing Commission pursuant to the Sentencing Reform Act of 1984, 28 U.S.C. § 994(a), took effect on November 1, 1987, and apply only to crimes committed on or after that date. Rossy contends that the Guidelines do not apply to him because the government failed to prove that he engaged in any acts in furtherance of the conspiracy on or after November 1, 1987. Rossy misconceives the nature of the government's burden here.

■ The government is required to prove sentencing factors under the Guidelines only by a preponderance of the evidence. *United States v. Macias*, 930 F.2d 567, 570 (7th Cir.1991); *United States v. Ross*, 905 F.2d 1050, 1054 (7th Cir.), *cert. denied*, — U.S. ——, 111 S.Ct. 172, 112 L.Ed.2d 136 (1990). Those factors include the occurrence of criminal conduct after the effective date of the Guidelines for which the defendant may be held accountable. *United States v. Watford*, 894 F.2d 665 (4th Cir.1990). In this case, the criminal conduct for which Rossy was sentenced involved participation in a conspiracy. So long as the government proved that the conspiracy continued (with Rossy's participation) after November 1, 1987, the Guidelines were applicable. *United States v. Osborne*, 931 F.2d 1139, 1144 (7th Cir. 1991).

■ The district court found that the conspiracy "was in fact extant" after November 1, 1987. Tr. Vol. 9, p. 1105. We review such a factual determination by the sentencing court for clear error. *United States v. Miller*, 891 F.2d 1265, 1269 (7th Cir.1989). In this case, the evidence estab- lished that calls were made from Rossy's phone to Cinquegrani's beeper number after November 1, 1987. Further, Cinquegrani testified that his last transaction with the conspiracy occurred sometime in the late fall of 1987 or early winter of 1988 when one of the participants in the conspiracy traveled from New York to Chicago to reclaim a poor quality bag of cocaine that Cinquegrani had purchased. This evidence supports the district court's conclusion that the conspiracy continued after the effective date of the Guidelines. Further, Rossy presented no evidence that he had withdrawn from the conspiracy. Although the government is incorrect in stating that a defendant bears the burden of proving withdrawal from a conspiracy,[3] the defendant does have the burden of presenting sufficient affirmative evidence to raise the issue for the jury. *United States v. Read*, 658 F.2d 1225, 1236 (7th Cir.1981). Rossy failed to present any evidence of withdrawal. Thus, the district court did not err in concluding that the Guidelines were applicable.

B. *Amount of Cocaine Distributed by Rossy*

■ Rossy claims that the district court erred in its finding that he had distributed at least five kilograms of cocaine. Because the amount of narcotics involved is a factor under the Sentencing Guidelines, the government's burden is satisfied by a preponderance of the evidence. *Macias*, 930 F.2d at 570. The sentencing court's determination as to this amount is entitled to deference unless it is clearly erroneous. *Miller*, 891 F.2d at 1269. Kevin Keller described three separate transactions with Rossy, involving a total of at least 2½ kilos.[4] Cinquegrani testified that he en-

---

**3.** The government cites *United States v. Dorn*, 561 F.2d 1252 (7th Cir.1977), for the proposition that "[t]he burden is on the defendant to show that he withdrew from the conspiracy." Pl.Br. at 7. This court explicitly overruled *Dorn* in *United States v. Read*, 658 F.2d 1225, 1236 n. 7 (7th Cir.1981), in which we held that "the burden of going forward with evidence of withdrawal ... remains on the defendant. However, once he advances sufficient evidence, the burden of persuasion is on the prosecution to disprove the defense of withdrawal beyond a reasonable doubt." *Id.* at 1236.

**4.** Rossy argues that Keller's testimony establishes only 1½ kilos of cocaine, because Keller claimed that each of his three transactions with Rossy took place during a separate trip to New York, yet "there were only 2 total trips to New York." Appellant's Br. at 6. Even a cursory reading of the transcript, however, reveals that Keller described three distinct trips to New York. Tr. Vol. 5, pp. 487–89, 490–91, and 497.

gaged in "three or four transactions" with Rossy, each of which involved "about a kilogram." Tr. Vol. 6, pp. 729–31. This evidence was more than sufficient to support the district court's finding.

## C. *Denial of "Minor Participant" Status*

Rossy argues that he should have been sentenced as a "minor participant" under the Guidelines because his only role in the conspiracy was that of a "somewhat naive courier." Appellant's Br. at 21. We have previously held that there is no per se rule entitling drug couriers to minor participant status. *Osborne*, 931 F.2d at 1157–59. Rather, we have stated that the issue is whether the defendant is "'substantially less culpable'" than his co-conspirators. *Id.* at 1157 (quoting *United States v. Bigelow*, 914 F.2d 966, 975 (7th Cir.1990) (emphasis in original)). This is a question of fact subject to review for clear error. *Id.*

We have emphasized the important role that couriers play in a drug distribution network. *See id.* at 1159; *United States v. Briscoe*, 896 F.2d 1476, 1507 (7th Cir.1990). In *Osborne*, we found that the sentencing court had not erred in concluding that a defendant who had transported a total of eleven ounces of cocaine was not entitled to minor participant status. We observed:

> [The defendant's] transportation of a total of eleven ounces of cocaine in two separate trips from Florida to Wisconsin certainly can be considered as nothing but playing an integral role in the conspiracy and does not serve to justify a lowering of his culpability to a level substantially below that of his conspirators.

931 F.2d at 1159. The district court in this case did not commit clear error in concluding that a defendant who was personally involved in the sale of more than five kilos of cocaine, at least two of which he transported across state lines, was not entitled to be sentenced as a "minor participant."

Although at one point Keller referred to the second of these trips as "that first trip," it is clear from the context that he simply misspoke.

## D. *Denial of Downward Departure*

Finally, Rossy asks us to reverse the district court's decision not to depart downward from the Guideline range in spite of the mitigating factors presented by Rossy. We have previously held that the decision not to depart from the Guidelines is entrusted to the sentencing court's unreviewable discretion, at least where, as here, the court carefully reviewed the allegedly mitigating factors before making that decision. *United States v. Macias*, 930 F.2d 567 (7th Cir.1991). Therefore, we reject Rossy's argument on this issue.

## III

We find all of Rossy's claims to be without merit, and therefore the district court's decision is AFFIRMED.

*Id.* at 497. Certainly, a reasonable factfinder could conclude that such was the case.