**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Craig T. AGRELL, Defendant–Appellant.**

**No. 91–2568.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 22, 1992.

Decided May 27, 1992.

Stephen J. Liccione, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Robert G. LeBell (argued), Styler, Kostich, Lebell & Dobroski, Milwaukee, Wis., for defendant-appellant.

Before COFFEY and KANNE, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

COFFEY, Circuit Judge.

Craig Agrell appeals his conviction and sentence for the offenses of conspiracy to distribute cocaine and possession of cocaine with intent to distribute. We affirm.

I.

On October 3, 1989, a federal grand jury returned a four-count indictment against Agrell and his co-defendant Edmund U. Rossy, Jr. Agrell was charged in Count One with conspiracy to possess with intent to distribute cocaine and in Count Two with possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 846 and 18 U.S.C. § 2.[1] Agrell pleaded not guilty to both counts and proceeded to trial on October 22, 1990.

Testimony at trial revealed that the defendant was a co-conspirator in a cocaine distribution network that stretched from New York suppliers through Illinois brokers to Wisconsin distributors. Kevin Keller, a paroled drug dealer from Westmont, Illinois, met the defendant in October of 1986. Keller testified on behalf of the government at trial and stated that at their

---

1. We need only address defendant Agrell's appeal, as Rossy's conviction for his involvement in the cocaine conspiracy was recently affirmed by this court. *United States v. Rossy,* 953 F.2d 321 (7th Cir.1992).

initial meeting he sold the defendant a kilogram of cocaine for about $30,000. This transaction began a relationship between Keller, a cocaine broker, and Agrell in which Agrell would purchase and distribute approximately a kilogram of cocaine every two or three months over the course of a ten-month period. In addition to the kilogram of cocaine that Keller sold the defendant in October of 1986, Keller specifically related at least three other separate kilogram transactions with the defendant: one transaction took place at Keller's residence in Illinois, while two or more kilogram transactions occurred at the defendant's apartment in Oshkosh, Wisconsin. In late 1986 or January 1987, the defendant loaned Keller between $8,000 and $10,000 for the purchase of additional cocaine. Keller traveled to New York City to purchase a pound of cocaine from Ron Massey and returned to Wisconsin to deliver the cocaine to Agrell. Edmund Rossy acted as a courier for Ron Massey on this deal.

After this transaction Rossy began soliciting Keller's future cocaine purchases, and on May 11, 1987, Keller flew to New York City at Rossy's expense and purchased a kilogram of cocaine from him. Because Keller had insufficient funds to pay for the cocaine, Rossy accompanied Keller to Chicago where they obtained $10,000 from Keller's partner, Sam Cinquegrani. Agrell was aware that Rossy was one of Keller's cocaine suppliers, and in the spring of 1987 the defendant Agrell met Keller's New York source of cocaine, an individual named "Meira."[2]

On May 29, 1987, while Keller and the defendant Agrell were in Appleton, Wisconsin conducting a cocaine transaction, Winnebago County drug investigators searched Agrell's apartment in Oshkosh pursuant to a valid search warrant. During the search of the defendant's apartment, police discovered approximately four ounces of cocaine, $1,000 in cash, a loaded .380 semi-automatic pistol, a loaded 9-shot .22 caliber revolver, and a variety of zip-lock baggies. Special Agent William Hehr of the Federal Drug Enforcement Agency testified as an expert witness at trial and related that the items seized during the search of Agrell's apartment were items used in a cocaine distribution enterprise.[3] Over the next several months, Keller continued to purchase cocaine through Rossy until his arrest in Wisconsin for delivering cocaine on August 7, 1987.

Keller's partner, Sam Cinquegrani, testified at trial that after Keller's arrest, Rossy's New York organization solicited him to engage in cocaine transactions. Cinquegrani testified that he and Rossy engaged in three or four cocaine transactions for approximately one kilogram each. He stated that his last transaction with Rossy occurred in late 1987 or early 1988. Cinquegrani related that Rossy would call Cinquegrani's pager number, and Cinquegrani would in turn contact Rossy in New York. At trial, Cinquegrani examined Rossy's telephone records and testified that his beeper number appeared on Rossy's telephone bill four times between January 19, 1988 and February 8, 1988.

Agrell presented an alibi defense at trial, calling several witnesses who testified that he was living in Colorado during the winter and had not returned to Wisconsin on May 29, 1987, the date his house was searched. The jury chose not to believe the defendant and found him guilty of conspiracy to distribute cocaine (Count One) and with possession with intent to distribute a quarter pound of cocaine (Count Four). On June 20, 1991, the district court sentenced Agrell to 188 months on each of the counts, directing that they be served concurrently with each other, followed by six years of supervised release. The district court also ordered Agrell to participate in drug screening and pay the usual special assessment of $100.

---

2. This individual was known to Keller as either "Tony Meira" or "Manuel Meira," while Keller's partner, Sam Cinquegrani, knew this individual as "Sandy." Keller testified that Rossy was a "middle man" working for "Meira."

3. Agrell was not arrested at the time of the search of his residence.

## II.

On the appeal of his conviction and sentence, the defendant raises the following questions: (1) did the district court commit error when it refused to grant Agrell's motion for mistrial after the court ruled the testimony of a government witness to be inadmissible; (2) did the court commit error in finding that the conspiracy continued beyond the effective date of the Sentencing Guidelines; (3) was the defendant entitled to a two-point reduction in the offense level for acceptance of responsibility; and (4) did the court err in considering the defendant's 1970 drug conviction in determining his criminal history category?

## III.

### A. Mistrial Motion

■ The defendant contends that the district court erred in refusing to grant his motion for mistrial following the testimony of government witness Daniel Davis. The government offered Davis' testimony to establish the defendant's motive, intent and absence of mistake pursuant to Federal Rule of Evidence 404(b).[4] The defense objected to the admission of Davis' testimony on the ground that it was offered to demonstrate Agrell's character rather than motive, intent or absence of mistake. The trial court received the evidence preliminarily and noted that a motion to strike would be sustained if the testimony did not satis-

fy any of the exceptions of Rule 404(b). Davis testified that from May 1986 until July or August of 1986 he served as a courier for the defendant, transporting marijuana and cocaine. Davis related that Agrell hired him to convey marijuana and cocaine from Florida to the defendant's house in Oshkosh, Wisconsin. His involvement with the defendant ended after he withheld approximately $85,000 of Agrell's cash.[5] Following the testimony of Davis, defense counsel renewed the motion to exclude the testimony and interposed a motion for mistrial. The trial court sustained the objection to the evidence, denied the motion for mistrial, and immediately gave the jury a curative instruction. The defendant argues on appeal that the district court erred in denying his motion for a mistrial because Davis' testimony was of such a prejudicial nature that the court's curative instruction did not "cure the damage caused by the erroneously admitted evidence."[6]

■ The district court's ruling denying Agrell's mistrial motion is reviewed under the abuse of discretion standard. *United States v. Fulk*, 816 F.2d 1202, 1205 (7th Cir.1987). Following Davis' testimony, the trial court immediately gave the jury a curative instruction, directing the jury members to disregard the testimony of Davis and also explained the reason why they should ignore this testimony.[7] "We

---

4. **"Rule 404. Character Evidence Not Admissible to Prove Conduct; Exceptions; Other Crimes**

   \* \* \* \* \* \*

   **(b) Other crimes, wrongs, or acts.**

   Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

5. At Agrell's request, Davis picked up the money from Agrell's home, but he withheld the cash from Agrell because of a dispute over the amount of money Agrell owed him. After spending $10,000 to $15,000 of it, someone stole the rest of the cash from Davis.

6. Upon the court's decision to strike Davis' testimony, defense counsel stated: "I realize that

your intent is ... to strike the testimony, to give a curative instruction or cleansing instruction, but it's my motion that it's insufficient, and I am going to move for a mistrial." The judge responded, "Well, I anticipated that. Motion for new trial will be denied. I will give them a cleansing instruction."

7. The court provided the following curative instruction:

   "THE COURT: Ladies and gentlemen of the jury, I know there are many aspects of criminal law that may be mystifying to people generally. But one of the foundations of this country is that in criminal cases we bend over backwards to make sure that the process of truth finding is rigorous and closely guarded and that it's to be governed by procedures and rules that have developed over the centuries and been proven to be effective in trying to arrive at the truth. One of those axioms of

generally must assume that the jury followed the court's cautionary instructions." *United States v. Mealy*, 851 F.2d 890, 903 (7th Cir.1988). "[I]f the trial judge believes [the curative instructions] were taken seriously ... we have little basis for disbelieving him." *United States v. Mazzone*, 782 F.2d 757, 764 (7th Cir.), *cert. denied*, 479 U.S. 838, 107 S.Ct. 141, 93 L.Ed.2d 84 (1986). Indeed, our system of trial by juries relies upon the ability of a jury to follow instructions. *See Opper v. United States*, 348 U.S. 84, 95, 75 S.Ct. 158, 165, 99 L.Ed. 101 (1954).

> "*A trial court's instructions to disregard erroneously admitted evidence of prior bad acts will normally avoid reversible error.* An instruction will not always cure the damage caused by erroneously admitted evidence. A reviewing court must determine with fair assurance whether, in spite of the instruction, the verdict was substantially swayed by the error."

*United States v. Boroni*, 758 F.2d 222, 225 (7th Cir.1985) (citations omitted) (emphasis added).

Agrell argues that the admission of Davis' testimony substantially swayed the verdict because there was a "paucity of direct evidence other than that of Kel-ler...." The fallacy of the appellant's argument is that there was "substantial" rather than a "paucity of" direct evidence against him. The physical evidence discovered during the search of Agrell's house included one-quarter pound of cocaine, $1,000 in cash, a variety of zip-lock baggies and a bottle of Manitol, which is sometimes added to high-grade cocaine to dilute the purity and thus increase the quantity for sale. In addition to Keller's testimony, which would have been sufficient to uphold Agrell's conviction even standing alone,[8] Kathy Ostberg, one of Keller's dealers, corroborated some of Keller's testimony. Ostberg's testimony revealed that Agrell either knew, or knew about, Rossy because during a meeting between Agrell and Keller, Ostberg heard Agrell inform Keller that "I think Rossy is trying to take over your territory." This testimony undermined Agrell's contention that he was unaware of a conspiracy to distribute cocaine that went beyond his purchases from Keller. Given the physical evidence discovered during the search of Agrell's house and the overwhelming evidence of his participation in the conspiracy established through Keller's testimony and corroborated by Ostberg, we are of the opinion that the verdict was not substantially swayed by the erro-

the common law is that when somebody is on trial for an event, whatever it may be that is alleged that they did, you don't establish that the event occurred by showing that they took part in event Y, some other time, some other place, maybe some other entirely different kind of act. Because it's a principle of law that you don't establish that somebody did something by proving they're a bad person and, therefore, because they did—they are a bad person, they did event X. We require much more stringent proof than that. And this concept is embodied in Rule 404 of the Federal Rules of Evidence. And I want to read this to you.

Evidence of a person's character or trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion.

Now, there are some exceptions to that, and they are exceptions that are very difficult to encompass within a set of facts and circumstances. You've heard some testimony from Mr. Davis this morning with respect to events that occurred a long time prior to the offense that's charged here in this conspiracy. The evidence came in because I thought it arguably might be under one of the exceptions. We have had a hearing; I'm convinced it does not come in for one of those permissible purposes; therefore, it has to be expunged from your mind. There is no evidence that this man knew Mr. Rossy at all. There is no evidence that this man—I'm talking about Mr. Davis—had any involvement with Mr. Agrell subsequent to the fall of 1986. So we're talking about an entirely different event.

I know this is difficult, and I suppose that it's something that I should have foreseen, but it's necessary for me to instruct you to wipe that out of your mind completely. Think about the evidence that has come in previously and that will come in subsequently, but don't think at all about the testimony of Mr. Davis. Can you do that?"

8. "When a conviction rests solely upon the uncorroborated testimony of an accomplice, we will uphold the verdict unless the accomplice's testimony is incredible as a matter of law." *United States v. Dunigan*, 884 F.2d 1010, 1013 (7th Cir.1989).

neous admission of Davis' testimony.[9] The defendant is unable to point to anything in the record which suggests that the jury failed to abide by the district court's curative instruction regarding Davis' testimony. Thus, the trial judge did not abuse his discretion in refusing to grant the defendant's motion for mistrial.

## B. Applicability of Sentencing Guidelines

■ The defendant argues that the Sentencing Guidelines should not have been applied to his sentence because the government failed to prove that his involvement in the conspiracy continued beyond November 1, 1987, the effective date of the Guidelines. We disagree. Agrell was sentenced for his participation in a cocaine conspiracy, and as long as the government established that the conspiracy continued after November 1, 1987, the Guidelines were applicable. *United States v. Rossy*, 953 F.2d 321, 325 (7th Cir.1992) (citing *United States v. Osborne*, 931 F.2d 1139, 1144 (7th Cir.1991)). This court has previously noted that "[m]embership in a conspiracy does not require direct involvement with each and every act of the conspiracy ... only that the defendant know of the conspiracy, that he intend to associate himself with its criminal purpose, and that he perform some act to advance the ends of the conspiracy." *United States v. Savage*, 891 F.2d 145, 149 (7th Cir.1989) (citing *United States v. Adamo*, 882 F.2d 1218, 1223–24 (7th Cir.1989)). In affirming Agrell's co-defendant's conviction, we held that "the burden of going forward with evidence of withdrawal ... remains on the defendant. However, once he advances sufficient evidence, the burden of persuasion is on the prosecution to disprove the defense of withdrawal beyond a reasonable doubt." *Rossy*, 953 F.2d at 325 n. 3 (quoting *United States v. Read*, 658 F.2d 1225, 1236 n. 7 (7th Cir.1981)). The trial court determined that the conspiracy continued beyond November 1, 1987, stating that there were contacts thereafter in furtherance of the conspiracy between Rossy and Cinquegrani. A sentencing court's determination regarding the length of a conspiracy is a question of fact and is reviewed by this court under the clear error standard. *Rossy*, 953 F.2d at 325 (citing *United States v. Miller*, 891 F.2d 1265, 1269 (7th Cir.1989)).

In this case, the government established that the conspiracy extended beyond November 1, 1987. Sam Cinquegrani (Kevin Keller's partner) testified that he received a total of three or four separate kilogram deliveries of cocaine from Edmund Rossy, and that the last transaction, which involved a kilo of such low-grade cocaine that it was unsellable, occurred sometime in the late fall of 1987 or early winter of 1988. After examining Rossy's telephone toll records at trial, Cinquegrani stated that his beeper number appeared on Rossy's telephone bill on January 19, 1988, February 2, 1988, February 4, 1988, and February 8, 1988. This evidence supports the district court's conclusion that the conspiracy continued after November 1, 1987, the effective date of the Guidelines. Moreover, the defendant has alleged but has failed to present evidence that he had withdrawn from the conspiracy prior to November 1, 1987. Since Agrell failed to carry his "burden of going forward with evidence of withdrawal," *Rossy*, 953 F.2d at 325, n. 3, the district court did not commit error in sentencing the defendant under the Guidelines.[10]

---

**9.** The government argues that the district court erred in holding that Davis' testimony was inadmissible because it established Agrell's intent to distribute the cocaine discovered in the search of his house. But since Agrell abandoned his argument that the cocaine was for personal use alone, Davis' testimony was not relevant to establish that Agrell possessed the cocaine with the intent to distribute it.

**10.** The defendant also challenges the district court's determination that more than five kilos of cocaine were involved in the offense for purposes of computing his base offense level under § 2D1.1 of the Sentencing Guidelines. The appellant's attorney argues as if only the quantum of cocaine that Agrell actually distributed were relevant for purposes of sentencing.

"[But t]he amount of narcotics considered in sentencing for conspiracy includes not only the amount involved in the transactions that were known to the defendant but also those that were reasonably foreseeable, reflecting the fact that each conspirator is responsible for the acts and offenses of each one of his co-

## C. Acceptance of Responsibility

■ The defendant contends that the sentencing court erred in refusing to grant him a two-point reduction in his total offense level for acceptance of responsibility. Agrell argues that he is entitled to a two-point reduction in sentence because he provided information to the government regarding an uncharged co-conspirator in an interview conducted subsequent to Agrell's conviction but prior to sentencing. The defendant argues that "although [his] assistance to the authorities came after the conviction, it was a demonstration of sincere contrition, complete acceptance of involvement and responsibility and was of a nature which was intended to assist the government."

> "Whether [Agrell] accepted responsibility within the meaning of § 3E1.1 is essentially a question of fact for the district court to resolve. We will uphold a district court's factual findings in determining a sentence unless they are clearly erroneous. 18 U.S.C. § 3742(e). Specifically, the commentary to § 3E1.1 states that '[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review and should not be disturbed unless it is without foundation.' Application Note 5."

*United States v. Blas*, 947 F.2d 1320, 1330 (7th Cir.1991) (quoting *United States v. Franklin*, 902 F.2d 501, 505 (7th Cir.1990)). Although the district judge did not specifically state why he refused to grant the defendant a two-point reduction for acceptance of responsibility, a review of the record establishes that there is more than sufficient information therein to support such a finding. Application Note 2 to Guideline § 3E1.1 states that the adjustment for acceptance of responsibility *"is*

*not intended to apply to a defendant [like Agrell] who puts the government to its burden of proof at trial by denying the essential factual elements of guilt,* is convicted, and only then admits guilt and expresses remorse." (Emphasis added). Indeed, it is questionable whether Agrell even expressed true remorse, for during the interview wherein he allegedly demonstrated "sincere contrition" and "complete acceptance of involvement and responsibility," law enforcement officers terminated the post-conviction conference after Agrell lied in response to a question. Thus, it is quite evident that the action of the sentencing court in denying the defendant a two-point reduction for acceptance of responsibility after the defendant denied the essential factual elements of his guilt at trial and lied at a post-conviction hearing was not clearly erroneous.

## D. Validity of 1970 Conviction

■ Finally, the defendant argues that the district court erred by including his 1970 conviction for smuggling marijuana in his criminal history category because he allegedly did not knowingly, intelligently and voluntarily enter this guilty plea. Agrell claims that "it cannot be discerned from the 1970 plea hearing that [he] was aware of the essential elements of the offense to which he was pleading; or that he was aware that upon his plea he would be waiving several constitutional rights." Application Note 6 to Guideline § 4A1.2 states that "sentences resulting from convictions that a defendant shows to have been previously ruled constitutionally invalid are not to be counted." This court has previously ruled that the defendant bears the burden of demonstrating that a prior conviction is constitutionally suspect. *United States v. Boyer*, 931 F.2d 1201, 1204 (7th Cir.1991)

---

conspirators committed in furtherance of the conspiracy."
*Osborne*, 931 F.2d at 1150 (quoting *United States v. Savage*, 891 F.2d 145, 151 (7th Cir.1989)). Agrell's attorney's argument is not only without merit, it borders on being sanctionable, as Judge Warren advised defense counsel at sentencing that the relevant amount of cocaine was

"the totality of the cocaine that's involved in the conspiracy," the defense counsel has failed to acknowledge the applicable case law, and he has failed to cite any case law in support of his position. Once a defendant is found to be part of a conspiracy, the quantity of cocaine the defendant actually distributed is immaterial.

(citing *United States v. Brown*, 899 F.2d 677, 679 (7th Cir.1990)).

In considering a Sentencing Guideline challenge to a prior guilty plea, the plea should be judged by the standard prevailing at the time of the entry of the plea. *United States v. Gallman*, 907 F.2d 639, 642, n. 2 (7th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 1110, 113 L.Ed.2d 219 (1991). In 1970, the constitutionality of a defendant's plea of guilty was governed by *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). *Id.*

"A defendant who enters [a guilty plea] simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. For this waiver to be valid under the Due Process Clause, it must be 'an intentional relinquishment or abandonment of a known right or privilege.' *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void. Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.

Thus, in addition to directing the judge to inquire into the defendant's understanding of the nature of the charge and the consequences of his plea, Rule 11 [of the Federal Rules of Criminal Procedure] also requires the judge to satisfy himself that there is a factual basis for the plea."

*McCarthy*, 394 U.S. at 466–67, 89 S.Ct. at 1171 (footnotes omitted).

The transcript of the 1970 plea hearing before the sentencing court reveals that the judge explicitly cited the *McCarthy* decision in his acceptance of Agrell's guilty plea. The eleven-page transcript from the sentencing hearing reflects that the trial judge inquired into the defendant's age, educational background and mental status. Moreover, Agrell while before the court signed a waiver of his Fifth Amendment rights, with his attorney adding "I think that the Defendant is also aware that at the trial he'd have a right to be confronted by the witnesses against him and present his witnesses, and he is waiving all that by this plea." The record demonstrates that the sentencing judge specifically ensured that Agrell understood the charge against him and that there might be technical defenses that the defendant, as a non-lawyer, would not comprehend. The court also inquired whether Agrell's plea was voluntary, whether he understood the maximum penalty he could receive and whether he understood that his guilty plea would waive the right to a jury trial. The defense attorney, in the presence of Agrell, further informed the court that the defendant understood he was waiving the right to present witnesses and confront the government's witnesses. As a result, the court found that "the defendant's waiver of his constitutional rights is a voluntary, knowledgeable and intelligent act on his part, done with sufficient awareness of the relevant circumstances and the permissible consequences and that there is a factual basis for the plea pursuant to Rule 11...." Based on the sentencing judge's inquiry of whether Agrell's plea was knowingly, intelligently and voluntarily made, we are of the opinion that the 1970 conviction was constitutionally valid. Thus, this conviction was properly included in his criminal history category for the instant offenses.

## IV.

For the reasons stated, the defendant's conviction and sentence are

AFFIRMED.