124 F.3d 205
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Royce L. GARROTT, Defendant-Appellant.
 Nos. 96-3155, 96-3713.
 United States Court of Appeals, Seventh Circuit.
 Submitted August 13, 1997.*
Decided August 27, 1997.
 
 Appeal from the United States District Court for the Southern District of Illinois.
 RIPPLE, ROVNER, and EVANS, Circuit Judges.
 
 ORDER
 
 1
 GILBERT On February 7, 1996, in a second superseding indictment, a federal grand jury charged Royce L. Garrott ("Royce") and Zarka J. Garrott ("Zarka") with conspiracy to distribute and possess with the intent to distribute cocaine base, in violation of 21 U.S.C. § 846 and 841(a)(1) (Count 5), and with distribution and possession with the intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) (Count 7). A jury found the Garrotts guilty of these charges. The district court sentenced Royce to 262 months' imprisonment and Zarka to 300 months' imprisonment.
 
 
 2
 On appeal, Royce challenges his conviction and sentence on a variety of grounds. Distilled to their essence, Royce contests the constitutionality of his indictment, the sufficiency of the evidence supporting his conviction, the denial of his motion for mistrial based on the statement of Inspector William Greenwood regarding drug residue, the admission of William Deloch's testimony regarding the statements Royce made in the county jail, and the attribution of 132 grams of cocaine base to Royce's offenses for purposes of sentencing.[1] Zarka raises only one claim on appeal. He challenges the two-level enhancement he received for possession of a gun during the crime of conviction.
 
 I. Royce's Claims on Appeal
 
 3
 Royce claims that the indictment did not contain sufficient information about the charges against him to enable him to prepare his defense. As Royce raises this issue for the first time on appeal, it is waived absent plain error. Fed.R.Crim.P. 52(b). See United States v. Caputo, 978 F.2d 972, 974 (7th Cir.1992).
 
 
 4
 The minimum requirements of an indictment are established by the Fifth Amendment right to indictment by a grand jury and its double jeopardy bar, and the Sixth Amendment right of a defendant to be informed of the charges against him. United States v. Roman, 728 F.2d 846, 850 (7th Cir.), cert. denied, 466 U.S. 977 (1984). Accordingly, "an indictment is sufficient if it 'first, contains the elements of the charged offense and fairly informs a defendant of the charge against him which he must defend, and second, enables him to plead double jeopardy as a bar to future prosecution.' " United States v. Locklear, 97 F.3d 196, 199 (7th Cir.1996), quoting Hamling v. United States, 418 U.S. 87, 117 (1974).
 
 
 5
 Royce raises a Sixth Amendment claim. He contends that the indictment did not inform him of the charges against him because Count 5 tracks the language of the statute without alleging any overt acts or theory explaining what happened from December 1994 through July 8, 1995. Count 5 of the indictment charges Royce and his co-defendants with the following:
 
 
 6
 On or about December 1994, to July 8, 1995, in Franklin and Jefferson Counties, Illinois, within the Southern District of Illinois,
 
 
 7
 Zarka J. Garrott,
 
 
 8
 Royce L. Garrott,
 
 
 9
 Larry W. Howard,
 
 
 10
 Phillip G. Bennett,
 
 
 11
 defendants herein, did knowingly and intentionally conspire, and agree together and with each other, and with other persons known and unknown to the Grand Jury, to knowingly and intentionally distribute and possess with intent to distribute a mixture and substance containing cocaine base, commonly known as "crack," a Schedule II, Narcotic Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1); all in violation of Title 21, United States Code, Section 846.
 
 
 12
 An indictment is not constitutionally inadequate merely because i: tracks the language of the statute allegedly violated. In United States v. Locklear, we held that an "indictment that uses the language of the statute when setting forth the offense is usually sufficient 'as long as the statutory language unambiguously sets out all the elements necessary to constitute the offense.' " 97 F.3d at 199, quoting United States v. Allender, 62 F.3d 909, 914 (7th Cir.1995), cert. denied, 116 S.Ct. 781 (1996). Count 5 satisfies this requirement.
 
 
 13
 The absence of a detailed statement of the facts is likewise not fatal to this conspiracy charge. in United States v. Roman, we explained that "a conspiracy indictment need not be as detailed and specific as an indictment alleging a substantive offense." 728 F.2d at 852. An indictment under 21 U.S.C. § 846 is constitutionally adequate " 'if it alleges a conspiracy to distribute drugs, the time during which the conspiracy was operative and the statute allegedly violated, even if it fails to allege any specific overt act in furtherance of the conspiracy.' " Roman, at 852, quoting United States v. Sweeney, 688 F.2d 1131, 1140 (7th Cir.1982) (other citations omitted). Count 5 alleges an agreement among the co-conspirators listed in the count (Zarka J. Garrott, Royce L. Garrott, Larry W. Howard, and Phillip G. Bennett) to distribute and possess with the intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) and § 846, between December 1994 and July 8, 1995, in Franklin and Jefferson Counties, Illinois. As Count 5 comports with the requirements for an indictment under § 846, its failure to allege any overt act or theory explaining what happened during the course of the conspiracy is not plain error. See Roman, 728 F.3d at 851-53 (recognizing that a conspiracy indictment need not be as detailed and specific as an indictment alleging a specific offense).
 
 
 14
 Although the deficiencies cited by Royce suggest that he is challenging only Count 5, he does not specifically limit his argument to that count. Assuming that Royce also challenges Count 7 of the indictment, his argument fails. Count 7 of the indictment is more specific than Count 5. It charges the Garrotts with "knowingly and intentionally distribut[ing] and possess[ing] with the intent to distribute [crack cocaine] in violation of Title 21, United States Code, Section 841(a)(1)," "[o]n or about the 8th day of July 1995, in Jefferson County, within the Southern District of Illinois." This count includes the elements of the offense, the statute violated by Royce's conduct, the date on which Royce committed the offense, and the geographical area in which he committed it. Count 7 thus provided Royce with sufficient information to prepare his defense.
 
 
 15
 Royce maintains that the government failed to present sufficient evidence to convict him of Counts 5 and 7 because the government did not show (1) that he possessed crack cocaine during the period set forth in the indictment, (2) that he had the knowledge, understanding, or intention of joining the conspiracy charged in the indictment, or (3) that he was involved in the conspiracy, distribution, or possession of crack cocaine during the period set forth in the indictment. When a defendant challenges the sufficiency of the evidence for his conviction, " '[t]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Magana, --- F.3d ----, Nos. 95-2640, 95-2643, 95-2953, 95-2641, 95-2644, 3336, 95-2642, 95-2791, 1997 WL 402468, at * 23 (7th Cir. July 18, 1997), quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979) (other citations omitted). "Reversal is warranted 'only when the record is devoid of any evidence, regardless of how it is weighed, from which a jury could find guilt beyond a reasonable doubt.' " Id. (citation omitted).
 
 
 16
 To prove that Royce possessed cocaine base, the government need not prove actual possession; proof of constructive possession will suffice. United States v. Jackson, 51 F.3d 646, 655 (7th Cir.1995). Constructive possession is shown when the evidence "sufficiently demonstrates ownership, dominion, or control over the contraband." Id.
 
 
 17
 Brenda Anderson, an informant, testified about Royce's involvement with Larry Howard and crack cocaine. Anderson testified that Howard picked her up from a nearby house on the morning of July 8, 1995, because he wanted her to weigh an incoming shipment of crack cocaine. In the meantime, Zarka telephone and told Anderson that he would be delivering the shipment. Zarka and Royce arrived around 8:00 a.m. Shortly thereafter, Anderson entered the kitchen and observed a brick of crack cocaine and a digital scale sitting on the table in front of Royce. Based on the arrival of the Garrotts in Royce's car, the appearance of a brick of crack cocaine and a digital scale on the kitchen table coincident with their arrival, and Royce's proximity to the brick, a reasonable jury could believe Anderson's testimony and find that Royce exercised sufficient ownership, dominion, or control over the crack cocaine. The absence of any evidence corroborating Anderson's testimony does not alter this conclusion. See United States v. Garcia, 66 F.3d 851, 857 (7th Cir.1995) ("[A] district court is entitled to credit even testimony that 'is totally uncorroborated and comes from an admitted liar, convicted felon, large scale drug-dealing, paid government informant.' ") (quotation omitted).
 
 
 18
 Royce next argues that the Government failed to proffer sufficient evidence to show that he had the knowledge, understanding, or intention of joining the conspiracy charged in the indictment. To prove that Royce was a member of the conspiracy, the government must offer sufficient evidence to demonstrate that Royce "knew of the conspiracy and that he intended to join and associate himself with its criminal design and purpose." Magana, at * 27. The jury's finding that Royce participated in the conspiracy "may be wholly circumstantial." United States v. Hall, 109 F.3d 1227, 1232 (7th Cir.1997).
 
 
 19
 Anderson's trial testimony revealed that Royce had a mutually cooperative relationship with his co-defendants. She testified that after Royce and Zarka made their delivery to Larry Howard on the morning of July 8, 1995, several individuals came by the house to purchase crack cocaine from Howard. She also testified that Howard and Phillip Bennett planned to buy a quantity of crack cocaine later that day from the "Garrott boys" and that Royce was going to deliver it. Around 10:00 p.m. that night, Howard told Anderson that Zarka had gone outside to get the crack. Anderson then observed Royce's car driving away from the house.
 
 
 20
 Royce argues that the government presented insufficient evidence to sustain his conviction because the government's evidence concerned only a single days, July 8, 1995, and not the period from December 1994 to July 8, 1995, alleged in Count 5 of the indictment. It is true that the government's evidence regarding Royce's criminal activity primarily concerned July 8, 1995. Count 5, however, alleges a conspiracy, and a conspiracy indictment need not be as detailed and specific as an indictment alleging a substantive offense. See Roman, 728 F.3d at 851-53 (finding no Sixth Amendment violation where time frame of conspiracy indictment spanned eleven years and five months). As the government presented sufficient evidence for a reasonable jury to find Royce guilty of conspiracy, the time frame alleged in the indictment is not error.
 
 
 21
 Royce maintains that prejudice resulted from the statement of Inspector William Greenwood regarding drug residue, which violated the district court's in limine ruling that evidence regarding the residue would be excluded at trial because it had not been tested for the presence of cocaine. While being cross-examined by Royce's counsel, Inspector Greenwood replied: "When you asked the question, did we find any drugs in the room, we didn't find any drugs, per se, but it was residue and--" caused prejudical error. Royce's counsel objected and moved for a mistrial. He argued that the remark violated the court's in limine order. The district court instructed the jury to disregard the Inspector's last statement, and denied the motion for mistrial.
 
 
 22
 A district court's denial of a motion for new trial will not be reversed absent abuse of discretion. United States v. Agrell, 965 F.2d 222, 225 (7th Cir.1992). The appellate court " 'generally must assume that the jury followed the court's cautionary instructions.' " Id. (citation omitted). " 'A reviewing court must determine with fair assurance whether, in spite of the instruction, the verdict was substantially swayed by the error.' " Id. at 226 (citation omitted). There is no reason to believe that the jury was substantially persuaded to convict Royce based on Inspector Greenwood's reference to drug residue, rather than on the other evidence introduced at trial. Any concern that the Government tried to elicit this improper statement is dispelled by the fact that Inspector Greenwood made this statement while being cross-examined by Royce's counsel.
 
 
 23
 For the first time on appeal, Royce claims that the district court violated Federal Rules of Evidence 401, 402, and 403 by admitting the testimony of William Deloch, a cellmate of Royce's in the county jail. Royce argues that Deloch's testimony concerned incidents outside the time frame set forth in the indictment and was therefore not relevant and unfairly prejudicial. Deloch testified about the statements Royce made following his July 8, 1995 arrest and incarceration in the county jail. Royce informed Deloch that he had $4,000 worth of crack cocaine--enough to post his bond--and that the police had overlooked three to four ounces of cocaine when they searched his motel room.
 
 
 24
 Although evidentiary rulings are normally reviewed for abuse of discretion, because neither Royce nor his counsel asserted this claim before the district court, this court reviews the admission of Deloch's testimony for plain error. Fed.R.Crim.P. 52(b). See United States v. Caputo, 978 F.2d 972, 974 (7th Cir.1992). Royce erroneously focuses on the date he spoke to Deloch rather than on the substance of his statements. Royce's comments to Deloch are relevant to the issue of whether Royce possessed crack cocaine and the quantities he possessed during the period of the conspiracy set forth in the indictment. Accordingly, the district court's admission of Deloch's testimony did not constitute plain error.
 
 
 25
 Finally, Royce challenges his sentence on the ground that the district court erred in finding 132 grams of cocaine base associated with his offenses. At the sentencing hearing, Royce objected to the Presentence Investigation Report ("PSI"), claiming that it was based on unreliable testimony. (Sentencing Transcript, at 6). The district court nevertheless adopted the PSI, which attributed 132 grams of crack cocaine to Royce's offenses. Royce raises this issue again on appeal, arguing that the district court erred in adopting the PSI because it was based on the unreliable testimony of Brenda Anderson and William Deloch.
 
 
 26
 The trial judge's determination of the quantity of drugs involved in an offense is a finding of fact reversed only if clearly erroneous. Hall, 109 F.3d at 1233. " 'The district court is to base its determinations upon the evidence in the record and upon its own credibility evaluations. These credibility evaluations will be given the utmost deference.' " Magana, 1997 WL 402468, at * 32, quoting United States v. Taylor, 72 F.3d 533, 542 (7th Cir.1995) (citation omitted).
 
 
 27
 The district found the trial testimony of Anderson credible and corroborated by the statement Larry Howard gave to FBI Special Agent Ron Bratcher. (Sentencing Transcript, at 19). The court determined that there was no reason to believe that the statements Howard made to Bratcher, prior to Howard's disappearance, were not "accurate and ... truthful testimony." Id. The district court did not mention Deloch. In extrapolating the weight of the brick, the court relied on Bratcher's expertise in the field and the fact that he had weighed similar items. (Sentencing Transcript, at 20-23). In light of the deference owed to the district court's credibility determinations and the absence of any extrinsic evidence from Royce, the district court's attribution of 132 grams of crack cocaine to Royce's offenses was not clearly erroneous. See Garcia, 66 F.3d at 859 (relying on estimates, rather than "mathematically precise figures," is a proper method for determining the quantity of drugs associated with an offense). II. Zarka's Claim on Appeal
 
 
 28
 Zarka challenges the district court's application of a two-level enhancement to his sentence based on the presence of a firearm in the house where he was arrested. Section 2D1.1(b) of the Federal Sentencing Guidelines provides for a two-level enhancement where a defendant is convicted of an offense involving controlled substances and "a dangerous weapon (including a firearm) was possessed" during the offense of conviction. The Application Notes state that the enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1(b), Application Note 3. "The district court's factual determination regarding the possession of a dangerous weapon during the course of a drug conspiracy is reviewed for clear error." United States v. Berchiolly, 67 F.3d 634, 640 (7th Cir.1995); Hall, 109 F.3d at 1235.
 
 
 29
 At the time of his arrest, Zarka was in the basement of Larry Howard's house and the gun was found by the couch in the living room. Phil Bennett, an individual arrested at Howard's home on July 8, 1995, testified that the firearm was lying on the table when he and Zarka were in the living room together that day. This testimony, paired with the fact that the gun was in plain view, led the district court to conclude that the enhancement applied to Zarka.
 
 
 30
 Zarka contends that the enhancement was improper because he did not have actual or constructive possession of the gun. The only case Zarka cites in support of this argument is United States v. Wetwattana, 94 F.3d 280 (7th Cir.1996). In that case, this court made clear that § 2D1.1(b)(1) does not require actual possession of the weapon by the defendant; constructive possession will suffice. Id. at 283.
 
 
 31
 Insofar as constructive possession is concerned, this court has held that a sentence enhancement may be based on a co-conspirator's possession of a firearm "if the possession was in furtherance of a jointly undertaken criminal activity that was reasonably foreseeable by the defendant." Berchiolly, 67 F.3d at 640; United States v. Taylor, 111 F.3d 56, 59 (7th Cir.1997). Zarka engaged in a conspiracy to distribute crack cocaine out of Larry Howard's house, where a gun was kept in the living room. The testimony of Phillip Bennett illustrates that Zarka was aware of the gun. Given that drugs were delivered to and sold from Howard's house, it is reasonably foreseeable that Howard kept the gun in the living room for his protection in connection with the drug sales.
 
 
 32
 Zarka argues that he was not in sufficient proximity to the crack cocaine or the gun to establish his possession, as he was in the basement, while the cocaine was in the kitchen and the gun was in the living room. This court has distinguished conspiracy cases from single-offense drug transactions for purposes analyzing whether the defendant possessed the handgun in sufficient proximity to the drug transaction. Wetwattana, 94 F.3d at 284. Where a conspiracy is concerned, this court's review is not limited to the evidence concerning proximity of the gun and drugs at the specific time of arrest. Instead, the issue is whether the gun was possessed during the course of the conspiracy. United States v. Cantero, 995 F.2d 1407, 1412 (7th Cir.1993). Due to the delivery and sale of drugs from Howard's house, it was not "clearly improbable" that the firearm was possessed in connection with the conspiracy. Zarka also argues that the district court erred by relying on Bennett's testimony because Bennett was sentenced to a term of forty-six months' imprisonment for his role in the same conspiracy. The district court's reliance on Bennett's testimony is not clear error. "This circuit ... 'has never held that corroboration is essential to sentencing.' " United States v. Linnear, 40 F.3d 215, 219 (7th Cir.1994) (citation omitted). The fact that the police found the gun in plain view gives credence to Bennett's testimony. Therefore, the district court's two-level enhancement of Zarka's sentence for possession of a firearm is affirmed.
 
 
 33
 AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Therefore, the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [1]
 On July 30, 1997, John R. Abell filed a motion to withdraw as Royce's appointed counsel. Mr. Abell seeks to withdraw as counsel because Royce sent a letter to the Illinois Attorney Registration and Disciplinary Commission accusing Mr. Abell of ineffective representation. Given that the issues on appeal have been briefed by both Mr. Abell and Royce and that Mr. Abell's obligations to Royce will come to a close with the instant order, Mr. Abell's motion to withdraw as counsel is hereby denied