**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Robert L. CAGLE, Defendant–Appellant.**

**No. 90–1956.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 2, 1990.

Decided Jan. 9, 1991.

R. Jeffrey Wagner, Steven M. Biskupic, Asst. U.S. Atty., Office of the U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

David Berman, Milwaukee, Wis., for defendant-appellant.

Before WOOD, Jr., COFFEY and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

A jury convicted defendant Robert Cagle of one count of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846, and one count of possession with intent to distribute cocaine in violation of § 841(a)(1). The district court sentenced Cagle to two concurrent 96 month terms of imprisonment pursuant to the Sentencing Guidelines. On appeal Cagle raises various challenges to his sentence. We affirm the sentence imposed by the district court.

## I. BACKGROUND

On September 19, 1988, an informant purchased one-half ounce of cocaine from Del McClinton at Cagle's residence on 2325A North 20th Street in Milwaukee. Two days later the informant again attempted to purchase cocaine at Cagle's residence, but was sent instead to 2373 North 15th Street, where he purchased another one-half ounce. The next day agents of the Wisconsin Department of Justice, Division of Criminal Investigations, obtained a warrant to search Cagle's residence. The agents arrested Cagle and four others. A search of Cagle revealed two one-ounce packages of cocaine in his pockets. Upstairs in Cagle's bedroom, the agents discovered a gym bag with Cagle's name and address on it containing 27.628 grams of cocaine, a gun holster containing a bag with 8.036 grams of cocaine, an electronic scale, and two handguns. In a dresser

drawer of the bedroom the agents found a ledger reflecting drug transactions. In a subsequent search of the 15th Street residence, the agents seized approximately 628 grams of cocaine. After further investigation, the agents discovered that Cagle, a high school janitor, owned seven beepers which had logged over 11,000 telephone calls in nine months.

On December 13, 1989, a grand jury returned a three-count indictment against Cagle. Count I charged a conspiracy which lasted from January to September 1988 to possess with intent to distribute in excess of 500 grams of cocaine in violation of sections 841(a)(1) and 846. Count II charged Cagle with possession with intent to distribute the 628 grams of cocaine found at the 15th Street residence in violation of section 841(a)(1). Count III charged him with possession with intent to distribute approximately three ounces of cocaine found at Cagle's residence in violation of section 841(a)(1). Cagle's defense at trial was that he had started drug-dealing on the day that he was arrested and was not involved in the conspiracy. The jury returned guilty verdicts on Counts I and III, but found Cagle not guilty on Count II.

A pre-sentence report recommended that the district court find the total amount of cocaine involved in the conspiracy to be five kilograms. The basis for this amount was the expert testimony of Special Agent William Hehr of the Drug Enforcement Administration regarding the ledger found in Cagle's bedroom. According to Agent Hehr, this notebook detailed the distribution of more than 75 ounce-sized quantities of cocaine and hundreds of gram quantity distributions. He also stated that four pages contained an "N" and a number which denoted the inventory of a kilogram of cocaine. At the sentencing hearing, Cagle countered that the total amount of cocaine he had conspired to possess and distribute was the three ounces that the agents discovered at his residence. He based this argument on the fact that the jury had acquitted him of possessing the 628 grams found at the 15th Street residence.

During a recess in the sentencing hearing, the district court asked the court reporter to read him Agent Hehr's trial testimony. Back in session, the court found that the ledger documented transactions involving approximately three kilograms of cocaine. Based on this determination, the district court identified 28 as the appropriate offense level. When added to Cagle's criminal history category of I, the offense level of 28 called for a sentencing range of between 78 and 97 months. Judge Curran sentenced Cagle near the upper end of this range by imposing concurrent 96 month prison terms on each count.

## II. ANALYSIS

### 1. *Quantity of Cocaine*

■ Cagle challenges the district court's factual determination concerning how much cocaine was involved in the charged conspiracy. He argues that the district court should not have relied on the testimony of Agent Hehr as to the amount of cocaine listed in the notebook because the ledger was not in Cagle's use or control and that the amounts of cocaine that Agent Hehr extrapolated from the ledger were incorrect. Further he contends, as he did at sentencing, that his involvement in the conspiracy included only the three grams found at his residence because the jury acquitted him of possessing the six hundred grams found at the 15th Street house.

■ Sentencing decisions of the district court, including those concerning the total amount of drugs involved in a conspiracy, are reviewed deferentially, and the court's findings of fact will not be disturbed unless clearly erroneous. *United States v. Franco*, 909 F.2d 1042, 1045 (7th Cir.1990). When examining findings under the clearly erroneous standard, an appellate court may reverse only when " 'on the entire evidence [it] is left with the definite and firm conviction that a mistake has been committed.' " *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

U.S.S.G. § 2D1.4 provides that "[i]f a defendant is convicted of a conspiracy or an attempt to commit any offense involving a controlled substance, the offense level shall be the same as if the object of the conspiracy or attempt had been completed." The commentary to § 2D1.4 provides that "[i]f the defendant is convicted of conspiracy that includes transactions in controlled substances in addition to those that are the subject of the substantive counts of conviction, each conspiracy transaction shall be included with those of the substantive counts of conviction to determine scale." U.S.S.G. § 2D1.4, comment 1. Further, the commentary permits the approximation of unseized quantities of drugs. District courts may consider the market price of the drug, financial or other records, similar transactions in controlled substances by the defendant, and the size or capacity of any drug manufacturing laboratory involved. U.S.S.G. § 2D1.4, comment 2. This requirement supports the underlying goal that some evidence support the approximation. *United States v. Lawrence,* 915 F.2d 402, 408 (8th Cir.1990); see also *United States v. McKeever,* 906 F.2d 129, 133 (5th Cir.1990) (quantity approximation upheld based on laboratory capacity); *United States v. Gerante,* 891 F.2d 364, 369 (1st Cir.1989) (quantity approximation upheld based on $68,000 in cash found in defendant's residence that the district court divided by the price generally obtained for cocaine); *United States v. Gohagen,* 886 F.2d 1041, 1043 (8th Cir.1989) (quantity approximation upheld based on police officer's observation of a five-inch wide piece of crack cocaine in a sandwich bag that was not in evidence).

Before we discuss the issue of approximation, we must decide whether the district court properly attributed the amounts listed in the ledger to Cagle. Not only did the agents find the ledger in Cagle's home, they found it in his bedroom along with other drug paraphernalia. Given the location of the ledger in Cagle's bedroom, it was not clearly erroneous for the district court to conclude that he had direct control over the ledger. Having concluded that Cagle controlled the ledger and that he

maintained it in the course of his drug transactions, the district court properly looked to it to determine the amount of cocaine that Cagle conspired to distribute from January through September of 1988.

The district court properly used the ledger to approximate the amount of cocaine Cagle distributed to be at least three kilograms. See U.S.S.G. § 2D1.4, comment 2. Agent Hehr, testifying as an expert, stated that each page of the ledger contained lists of numbers that were "definite ounces," totaling more than two kilograms. Agent Hehr also testified that certain references in the book documented the distribution of large numbers of gram-size quantities. In addition, Hehr stated that four of the pages contained an "N" denoting the receipt of one kilogram of cocaine. The government argued that the notebook recorded the distribution of five kilograms of cocaine. The court gave Cagle the benefit of the doubt and concluded that the notebook documented three kilograms at most. Based on the evidence in the record, we cannot say that the determination the district court reached concerning the quantity of cocaine Cagle had distributed was clearly erroneous.

### 2. *Adequacy of Notice*

Cagle also contends that he did not receive adequate notice that the district judge would rely on the ledger in determining the quantity of the drugs involved in the conspiracy, in violation of Fed.R. Crim.P. 32. Cagle failed to raise this challenge before the district court. In the absence of a proper objection, the district court's reliance on the drug ledger, even though it was not expressly mentioned in the presentence report, may only be reversed if it constituted plain error. *United States v. White,* 903 F.2d 457, 466 (7th Cir.1990).

Rule 32 does not require a sentencing judge to rely exclusively on grounds that have been explained in the presentence report. *United States v. Williams,* 901 F.2d 1394, 1400 (7th Cir.1990). Rule 32(a)(1) provides that "[a]t the sentencing hearing, the court shall afford the counsel

for the defendant ... an opportunity to comment upon the probation officer's determination and on other matters relating to the appropriate sentence." Courts have interpreted this rule to require that the grounds for departure must either be identified in the presentence report or by the court at the defendant's sentencing hearing. *Williams*, 901 F.2d at 1400. If the district court relies on factors not raised in the presentence report, as it did in this case, the court must identify those factors in a fashion that conveys their significance to defense counsel and give defense counsel an opportunity to address the court regarding those factors. *Id.* In addition, U.S.S.G. § 6A1.3(a) states that "[w]hen any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor."

The transcript of Cagle's sentencing hearing illustrates that during the course of the hearing the district court highlighted all of the grounds he relied upon to quantify the amount of drugs involved in the conspiracy. At the hearing, the court stated:

> COURT: Well, counsel, the Court has listened to the court reporter re-read the transcript of the officer's testimony, and I must say it is terribly confusing. But no where in there did he testify as to five kilograms. He did attempt to relate the numbers that were on the various pages, and interpret them as to, in some cases dollars, and then relate them to the actual amounts as he interpreted them.
>
> The court doesn't pretend to have followed the mathematical gyrations that the witness went through, but at least it[']s satisfied that there is no mention in that testimony of five kilograms of cocaine. There is a mention at one point of a mathematical computation which resulted in thirty-six ounces having been identified in the book. Right off hand I can't tell you what thirty-six ounces means in relation to kilograms—
>
> PROSECUTOR: It[']s one kilogram.
>
> COURT: One kilogram?

> PROSECUTOR: Approximately.
>
> COURT: At another point there is a reference to a kilogram which had not been fully sold, indicating that there was some sold but not[,] the testimony doesn't describe how much was sold. Another reference there appears to be to a discussion regarding another customer which may have been in addition to the thirty-six ounces. As near as the Court could come up with it does appear that there would be certainly something in excess of one kilo and something perhaps less than three.
>
> On that basis the Court is going to find that roughly there was approximately three kilograms of cocaine involved here, and will make the necessary adjustments.

This dialogue was more than sufficient to alert Cagle that the court would rely on Agent Hehr's testimony in reaching its determination concerning the quantity of drugs that would be used to set Cagle's offense level. The transcript also reveals that Cagle had sufficient opportunity to address Agent Hehr's testimony. Both before and after this dialogue, the district court gave Cagle's counsel several opportunities to object orally to the factual basis for the quantity determination. At no point did defense counsel object to the adequacy of the notice regarding the use of the ledger, nor did counsel ask for an adjournment in the sentencing hearing or further opportunity to respond to its use. The procedure used by the district court complied with the requirements of Rule 32 and Guideline § 6A1.3. Not only was there no plain error in this case, there was no error.

## III. CONCLUSION

For the foregoing reasons, the sentence imposed by the district court is

AFFIRMED.