UNITED STATES of America,
Plaintiff–Appellee,

v.

Jose VILLARREAL, Defendant–
Appellant.

No. 91–3698.

United States Court of Appeals,
Seventh Circuit.

Argued May 22, 1992.

Decided Oct. 13, 1992.

Steven M. Biskupic, Asst. U.S. Atty. (argued), Milwaukee, Wis., for plaintiff-appellee.

Janice A. Rhodes (argued), Milwaukee, Wis., for defendant-appellant.

Before BAUER, Chief Judge, MANION, Circuit Judge, and GIBSON, Senior Circuit Judge.[1]

FLOYD R. GIBSON, Senior Circuit Judge.

Jose Villarreal appeals his conviction under 18 U.S.C. § 924(c) and the district court's sentencing determination that he distributed between 3.5 and 5 kilograms of cocaine. We affirm.

## I. BACKGROUND

In the summer of 1990, Anthony Derengowski was charged with a third and fourth offense of operating a motor vehicle after the revocation of his license. In exchange for having these charges dropped, Derengowski agreed to cooperate with Kenosha, Wisconsin police by making controlled buys of illegal drugs. In October of 1990, Derengowski made a controlled buy of cocaine from Juan Torres, Jose Villarreal's brother-in-law. Derengowski made a second purchase of cocaine from Torres in October and arranged to buy two more ounces of cocaine on November 1, 1990. According to Derengowski, Torres told him that Torres' source was getting a kilogram of cocaine from Chicago approximately every other day. On November 1, Torres went to Derengowski's apartment, picked up money for the cocaine, went to Villarreal's residence in Racine, Wisconsin, and returned to Derengowski's apartment one and a half hours later. Torres showed Derengowski three one-ounce packages of cocaine and allowed Derengowski to select two of them. Shortly after leaving Derengowski's apartment, Torres was arrested and the police found the third one-ounce bag of cocaine in Torres' car.

Following Torres' departure from Villarreal's residence on November 1, law enforcement officers executed a search warrant. Officers found four ounces of cocaine underneath a sofa cushion, seven loaded firearms, and $5,000 in cash. While searching Villarreal, officers found four rounds of ammunition in his pocket, a card

in his wallet with "ounce/grams" conversions, and a slip of paper in his wallet with the name "Carlos" and a telephone number with a Chicago area code. In the bedroom officers found small personal use quantities of crack, cocaine, and marijuana, and two drug ledgers that indicated that Villarreal possessed between 16 and 20 ounces of cocaine for distribution.

On January 15, 1991, Jose Villarreal was charged in a three count indictment with conspiracy to possess with intent to distribute in excess of 500 grams of cocaine in violation of 21 U.S.C. §§ 841, 846 and 18 U.S.C. § 2, possession with intent to distribute approximately four ounces of cocaine in violation of 21 U.S.C. §§ 841, 846 and 18 U.S.C. § 2, and use of a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c). After a jury trial, Villarreal was found guilty on all counts and sentenced to 160 months.

## II. DISCUSSION

### A. Sufficiency of the Evidence

Villarreal was convicted under 18 U.S.C. § 924(c), which provides an additional five-year prison term for "[w]hoever, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm. . . ." In order to support a conviction under § 924(c), the government must prove beyond a reasonable doubt that the defendant either "used" or "carried" the firearm and that it "facilitated or had a role in the crime, such as emboldening an actor who had the opportunity or ability to display or discharge the weapon to protect himself or intimidate others. . . ." *United States v. Vasquez*, 909 F.2d 235, 239 (7th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 2826, 115 L.Ed.2d 996 (1991) (citation omitted). In arguing there was insufficient evidence to sustain his conviction under § 924(c), Villarreal bears a heavy burden because we view the evidence in the light most favorable to the government and "determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*

---

**1.** The Honorable Floyd R. Gibson, Senior Circuit Judge for the United States Court of Appeals for the Eighth Circuit, is sitting by designation.

First, Villarreal argues there was insufficient evidence from which a reasonable jury could find that he "used" a weapon during the commission of a drug sale. He argues he had the weapons for wholly unrelated purposes—he collected guns as a hobby and used them to protect his family. Even assuming these facts to be true, there is sufficient evidence to support the jury's finding that the weapons were also used for drug-related protection. We have interpreted the term "using" in a broad manner to "include[] the possession of a firearm which in any manner facilitates the execution of a felony." *United States v. Ocampo*, 890 F.2d 1363, 1371 (7th Cir.1989) (citation omitted). We held a defendant intended to use a firearm in the commission of drug-related crime when the weapon was "strategically located so as to be quickly and easily available for use during a *drug transaction*." *United States v. Wilson*, 938 F.2d 785, 791 (7th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 946, 117 L.Ed.2d 115 (1992) (emphasis in original) (citation omitted). Here, law enforcement officers found seven loaded firearms, drug ledgers and drug paraphernalia in the bedroom adjacent to the living room. The loaded weapons were strategically located and accessible to be used for protection and intimidation in case any problems arose during a drug transaction. "The fact that he never brandished, fired, or referred to the gun[s] during the drug transaction is immaterial." *United States v. Tolliver*, 937 F.2d 1183, 1190 (7th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 329, 116 L.Ed.2d 269 (1991).

Second, concerning the "in relation to" element, Villarreal argues there was no nexus between the guns found in the bedroom and any drug distribution in the house. The government must prove "some relation or connection between the underlying criminal act and the use or possession of the firearm." *United States v. Rosado*, 866 F.2d 967, 970 (7th Cir.), *cert. denied*, 493 U.S. 837, 110 S.Ct. 117, 107 L.Ed.2d 79 (1989) (quotation and citation omitted). In light of the fact the weapons were found among drug ledgers and drug paraphernalia, there was sufficient evidence from

which the jury could reasonably infer that Villarreal had the gun to protect the drugs or money in his possession, thus violating § 924(c).

### B. Jury Instructions

Villarreal contends the district court improperly instructed the jury on the § 924(c) charge. "On review of a challenge to the sufficiency of the jury instructions, the question is not the correctness of a single phrase, but whether the instructions as a whole were sufficient to inform the jury correctly of the applicable law and the theory of defense." *United States v. Carter*, 910 F.2d 1524, 1531 (7th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1628, 113 L.Ed.2d 724 (1991). The district court gave the following instruction to the jury:

> In order to establish the offense of using or carrying a firearm during and in relation to a drug trafficking offense as charged in Count Three of the indictment, the government must prove the following propositions:
>
> First, the defendant committed the crime of possession with intent to distribute cocaine as charged in Count Two of the indictment; and
>
> Second, that the defendant, during and in relation to the crime charged in Count Two of the indictment knowingly used or carried a firearm.
>
> . . . .
>
> As used in these instructions, the phrase "use ... of firearm" means having a firearm available to aid or facilitate the commission of a drug trafficking offense, in this case possession with intent to distribute cocaine.

Villarreal argues the district court erred in giving the instruction because the instruction failed to explain the necessary nexus between the firearms and the drug offense, failed to explain the term "in relation to," and did not explain that mere possession of the firearms was an inadequate basis for conviction. We disagree. The instruction set forth the basic elements of the offense, explained the term "use ... of a firearm," and adequately informed the

jury that it must find a relationship between the guns found in the bedroom and the underlying drug offense. *United States v. Malin*, 908 F.2d 163, 167 (7th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 534, 112 L.Ed.2d 544 (1990). Furthermore, the court was under no obligation to give an explanatory instruction concerning the phrase "in relation to." *See id.* at 168 ("The phrase *in relation to* speaks for itself; any further explanation is superfluous."). The jury instructions, considered as a whole, were consistent with this circuit's interpretation of § 924(c), and "treat[ed] the issues fairly and adequately." *Id.* (quotation and citation omitted).

### C. Sentencing

■ Villarreal also challenges the district court's sentencing determination; he argues the court erred in determining the amount of cocaine involved in the conspiracy, and therefore erred in calculating his base offense level. At the sentencing hearing, Villarreal argued he could be held accountable for no more than the four ounces of cocaine recovered during the execution of the search warrant; the government argued Villarreal should be held accountable for over 5 kilograms of cocaine. The court stated that it was "giving Mr. Villarreal the benefit of the doubt" by finding that the evidence established that Villarreal distributed between 3.5 and 5 kilograms of cocaine.

In reviewing a sentencing court's determination of the quantity involved in a cocaine conspiracy, we give great deference to the sentencing court's findings unless they are clearly erroneous. *United States v. Rossy*, 953 F.2d 321, 325 (7th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 1240, 117 L.Ed.2d 473 (1992). "[A]n appellate court may reverse only when on the entire evidence [it] is left with the definite and firm conviction that a mistake has been committed." *United States v. Cagle*, 922 F.2d 404, 406 (7th Cir.1991) (quotation and citation omitted).

In determining the quantity of drugs attributable to a defendant, the sentencing court is not controlled by the quantity of drugs charged in the indictment. Rather, the commentary to Sentencing Guideline § 1B1.3(a)(2) provides that "in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." The Guidelines allow a court to approximate the quantity of unseized drugs by considering factors such as the prevailing price of the illegal drug, financial records, and similar transactions made by the defendant. U.S.S.G. § 2D1.4, comment. (n. 2).

The district court relied on the following factors in making its determination: (1) on the day Villarreal was arrested, he had sold at least three ounces of cocaine in a controlled buy and had four ounces in his possession; (2) Villarreal had $5,000 in cash in his pocket even though he had not worked steadily and admitted having a five-year old drug habit; (3) testimony from two witnesses established the conspiracy had been going on since July; (4) drug records detailed numerous sales of cocaine; (5) 71 telephone calls were made from Villarreal's residence to the same Chicago phone number within a two-month period.

■ Villarreal argues that these pieces of evidence standing alone do not support the court's findings that he distributed between 3.5 and 5 kilograms of cocaine. Although he is correct that each piece of evidence alone may not support a finding, he fails to consider the aggregate effect of the evidence presented to the district court. First, on the day of his arrest, Villarreal had sold three ounces of cocaine and had four ounces in his possession. Based on the time period alleged in the indictment, the court may consider this amount in determining the total amount of drugs distributed during the conspiracy. *See United States v. Bafia*, 949 F.2d 1465, 1479 (7th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1989, 118 L.Ed.2d 586 (1992) (court determined amount of cocaine for sentencing by taking the lowest estimate of the weekly amount the defendant admitted to receiving and multiplying that amount by

the number of weeks the defendant acted as a distributor). Second, officers found $5,000 in cash in Villarreal's possession although he admitted he had a cocaine habit and no steady source of income. Third, police discovered drug notes, seven loaded firearms and other drug paraphernalia in Villarreal's bedroom. A government expert testified the cocaine prices found in the drug ledger were consistent with the price prevailing at the time of Villarreal's arrest. *See Cagle,* 922 F.2d at 407. Fourth, the testimony of Derengowski and Torres bolstered the government's theory that Villarreal had supplied Torres for at least four months prior to Villarreal's arrest. Although Villarreal argues their testimony was vague and incredible, a sentencing court may consider all evidence presented at trial. *See United States v. Soria,* 965 F.2d 436, 442–43 (7th Cir.1992) (sentencing court did not err in relying on testimony of witness who testified as part of his plea agreement, admitted to lying at his sentencing, and whose testimony differed significantly from previous accounts to police). Finally, the telephone records are another link in the chain of evidence supporting the existence of a drug conspiracy. *See United States v. Marks,* 816 F.2d 1207, 1212 (7th Cir.1987). Torres told Derengowski that his source was receiving his cocaine from a source in Chicago approximately every other day. When law enforcement officers searched Villarreal they found a slip of paper with the name "Carlos" and a Chicago phone number; this slip of paper was found among a card containing "ounce/gram" conversions, $5,000 in cash, and four rounds of ammunition. Phone records indicated that in a four month period over 70 calls were placed to that Chicago phone number. Derengowski's testimony, the proximity of the phone number to other drug-related items, and the unusually high number of calls placed to that number all indicate a connection between the phone number and Villarreal's drug business. This evidence, considered as a whole, supports the district court's finding that Villarreal distributed between 3.5 and 5 kilograms of cocaine.

We hold the court conducted a thorough sentencing hearing, judged the credibility of the witnesses, weighed the evidence presented at trial, and assessed the accuracy of the presentence report. Based on evidence presented at sentencing, the court did not commit reversible error in determining that Villarreal distributed between 3.5 and 5 kilograms of cocaine.

## III. CONCLUSION

Based on the foregoing, we affirm the district court.

AFFIRMED.