**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Eddie Mae IVORY, Cleo Thomas Hightower, Betty Ann Berry, and Anthony Heard, Defendants–Appellants.**

Nos. 92–2793, 92–2823, 92–2854 and 92–2893.

United States Court of Appeals, Seventh Circuit.

Argued April 30, 1993.

Decided Dec. 16, 1993.

Christopher T. Van Wagner (argued), Office of the U.S. Atty., Madison, WI, for plaintiff-appellee.

Howard S. Goldman (argued), Tomlinson, Gillman & Rikkers, Madison, WI, for Eddie Mae Ivory aka Eddie Mae Hightower.

Mark A. Eisenberg, Madison, WI (argued), for Cleo T. Hightower.

Margaret Danielson, Madison, WI (argued), for Betty A. Berry.

Daniel W. Hildebrand (argued), Ross & Stevens, Madison, WI, for Anthony Heard aka "Tony".

Before EASTERBROOK and MANION, Circuit Judges, and EISELE, Senior District Judge.[*]

PER CURIAM.

The defendants were involved in a cocaine distribution ring in Madison, Wisconsin, from April 1991 through October 1991. The ring initially distributed its wares from Betty Berry's apartment, where Cleo Thomas Hightower and Eddie Mae Ivory also planned their business. In July 1991 Hightower and Ivory began to use street sellers (called "workers") to distribute their crack cocaine. The district court concluded that Anthony Heard was among these workers.

Because of Berry's addiction, Hightower and Ivory rented an apartment of their own and moved the distribution operation there in August 1991. Concern over the safety of the drug cache prompted another move, on October 1, 1991, to a townhouse Hightower and Ivory rented as husband and wife. On October 25, 1991, the Madison Police Department executed a search warrant at this latest address. The officers found 33 grams of crack cocaine, $9,000 in cash, 18 guns, and the names and addresses of co-conspirators as well as drug buyers. Hightower and Ivory were present when the police officers executed the warrant. Hightower, Ivory, Berry, and Heard all pleaded guilty. They raise distinct issues on appeal.

■ **Betty Berry** attacks the district court's refusal to grant her a "minor role"

reduction pursuant to U.S.S.G. § 3B1.2. The guideline range, computed without regard to this reduction, was 51 to 63 months. The district court selected 60 months, the mandatory minimum under the statute. Berry does not contend that a sentence of less than 60 months is legally permissible, which renders the precise computation of the offense level irrelevant. We therefore need not decide whether Berry played a "minor role," for the answer makes no difference to her sentence.

■ **Eddie Mae Ivory** pleaded guilty to an offense involving more than 50 but less than 150 grams of cocaine base. Her base offense level is 32. There was a downward adjustment of two levels for acceptance of responsibility and an upward adjustment of four levels, pursuant to Guideline § 3B1.1(a), for her role as an organizer or leader of a criminal activity involving five or more participants. The final offense level of 34 produced an imprisonment range of 151–88 months. In imposing sentence, the court selected a sentence at the bottom of the range. Ivory attacks the four-level upward adjustment. She offers two reasons for disputing the finding that she was an organizer or leader of the criminal activity: first, that the unsworn statements in the presentence report are insufficient for such a finding; second, that she was not as much in charge as Hightower. Both of these arguments fail.

On July 16, 1992, Ivory filed objections to the presentence report. She contested only the opinions and conclusions the probation officer drew from the factual information in the report; she did not attack the factual statements themselves. Ivory did not testify at the sentencing hearing or ask to do so. The district court was permitted to adopt unchallenged factual propositions in the presentence report. *United States v. Spears*, 965 F.2d 262, 273 (7th Cir.1992); *United States v. Musa*, 946 F.2d 1297, 1308 (7th Cir.1991). Such an adoption ordinarily satisfies the provisions of Fed.R.Crim.P. 32(c)(3)(D). The absence of sworn testimony from which the factual material was derived therefore does not matter; Ivory is stuck

---

[*] Hon. G. Thomas Eisele, of the Eastern District of Arkansas, sitting by designation.

with factual statements that she did not contest.

■ Given the facts narrated in the presentence report, Ivory's challenge to the adjustment is doomed. The district court's inferences (and consequent disposition under the Guidelines) will be disturbed only if clearly erroneous. *Spears,* 965 F.2d at 273; *United States v. Bafia,* 949 F.2d 1465, 1479 (7th Cir.1991); *United States v. Cagle,* 922 F.2d 404, 406 (7th Cir.1991). The Commentary to § 3B1.1 states that various factors should be analyzed in distinguishing a leadership and organizational role from one of mere management or supervision. The district court considered these, explaining:

I'm fully satisfied that Ms. Ivory qualifies for a four level enhancement because of her role in this activity. The indications are that she received two fur coats, as the Presentence Report says, excessive amounts of food, also food stamps, all kinds of loot that she obtained in exchange for crack cocaine. She was enjoying it, she enjoyed the fruits of all of these sales. She was highly involved in organizing it. Despite the fact that she was concerned about her own children's use of crack cocaine, she didn't seem to have any concern about involving greater and greater numbers of people in the use of crack cocaine, whatever it would do to them. She handled the drugs, she counted the money, she was involved in deciding who would buy, who would be let into the apartment. She made arrangements with her own kids to some extent. She carried a weapon to protect the drugs and money. She was heavily and significantly involved in the largest crack cocaine conspiracy that I've ever known about in the city of Madison ... and I think there are few people that deserve that four level enhancement more than Miss Ivory and Mr. Hightower.

In response to Ivory's contention that she was less culpable and less a leader of criminal activity than Hightower, the court stated:

I'm not at all convinced in my own mind whether Mr. Hightower or Ms. Ivory was the dominant player in this conspiracy. They were both significantly involved, and they were involved in organizing and supervising, but it's not entirely clear which of the two was dominant. But certainly Ms. Ivory was a very important player and she exercised a great deal of influence in this conspiracy.

A defendant need not be *the* creator of the criminal scheme or enterprise or control all aspects of it in order to be an organizer or leader. *United States v. Brown,* 900 F.2d 1098, 1101–02 (7th Cir.1990). The district court's finding that Ivory was *an* organizer or leader is not clearly erroneous.

■ **Cleo Thomas Hightower** pleaded guilty to possession of cocaine base with intent to distribute it and to a violation of 18 U.S.C. § 924(c), which forbids the use or carrying of a firearm in connection with a drug trafficking crime. Hightower later asked to withdraw his plea, contending that shortly before he pleaded guilty he had been diagnosed with colon cancer and believed he only had a few years to live. He contends that he pleaded guilty without caring what he was doing. Now that he has learned he still has a substantial time to live, he wants to withdraw the plea and go to trial.

Doctors performed a right hemicolectomy on Hightower on April 29, 1992, and discharged him on May 6, 1992, "in good condition", with a return in four days for removal of surgical staples, and in two to three weeks for routine follow-up. Hightower pleaded guilty on May 15, 1992. At that time the court engaged in the following colloquy with Hightower:

THE COURT: Thank you. Mr. Hightower, for the record, how old are you?

THE DEFENDANT: Fifty-two.

THE COURT: How much formal education have you had?

THE DEFENDANT: High school.

THE COURT: Is there any reason why you might not be able to understand what is being said to you today such as being ill or very tired or being under the influence of drugs or alcohol?

THE DEFENDANT: No.

The court then went on to ask Hightower's attorney if he was aware of any reason why the court should not ask Hightower how he

wished to plead to Counts I and IV. Hightower's attorney stated that he knew of none.

An analysis of the attempted withdrawal of a guilty plea requires reference to both Fed. R.Crim.P. 11 and 32. Rule 11(d) provides that the court will not accept a plea until it has determined that "the plea is voluntary and not the result of force or threats". The judge also must address the defendant and inquire whether the defendant's willingness to plead guilty resulted from prior discussions between the attorney for the government and the defendant or the defendant's attorney. The judge complied with these requirements.

■■■ Hightower misstates Rule 32 in asserting that "Rule 32(d) . . . permits a defendant to withdraw a plea before sentencing for 'any fair and just reason'." The rule actually states that a court *may* permit withdrawal of the plea. A defendant "does not have an absolute right to withdraw his guilty plea, and the decision to allow him to do so is within the sound discretion of the trial court." *United States v. Caban*, 962 F.2d 646, 649 (7th Cir.1992), quoting *United States v. McFarland*, 839 F.2d 1239, 1241 (7th Cir. 1988). The district court afforded Hightower a hearing on his motion to vacate his plea and did not abuse its discretion in denying the motion. The judge stated: "Mr. Hightower may regret his choice at this time, but he hasn't said anything to convince me that the choice he made was not a knowing and intelligent and voluntary choice." Hightower may not have "cared," as he now asserts, about his decision to plead guilty, but a casual plea is nonetheless voluntary. Statements made to the court at the time of the plea are binding, and Hightower's current attempt to retract them does more to expose him to a prosecution for perjury than to justify the withdrawal of the plea.

■■ **Anthony Heard** pleaded guilty to conspiracy to possess cocaine and cocaine base with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846. As part of the plea bargain, the prosecutor stipulated that Heard did not anticipate that the other conspirators would distribute more than five grams of crack, which enabled Heard to escape the mandatory minimum penalty. He

was sentenced to 33 months' imprisonment. After pleading guilty and locking in the concession (a subject on which the prosecutor could not change his mind, even if the case went to trial, without confessing a violation of the Department of Justice's rule against "undercharging" in order to evade the Guidelines and minimum penalty laws), Heard asked to withdraw the plea. He asserted that the record does not establish a factual basis for the plea and that the court failed to inform him of the elements of the offense to which he was pleading. The latter contention is frivolous, so we focus on the former.

Criminal Rule 11(f) provides: "Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea." Although language in a few of this circuit's cases suggests that only the defendant's statements may supply the necessary "factual basis"—e.g., *United States v. Frye*, 738 F.2d 196, 199 (7th Cir.1984); *United States v. Plisek*, 657 F.2d 920, 924 (7th Cir. 1981); *United States v. Wetterlin*, 583 F.2d 346, 352–53 (7th Cir.1978)—Rule 11 does not distinguish between factual material supplied by the defendant and that supplied by the prosecutor. Consequently, "Rule 11(f) does not require the district judge to engage in a colloquy with the defendant to establish a factual basis for a guilty plea. A judge may find the factual basis from anything that appears on the record, which includes the government's proffer." *Musa*, 946 F.2d at 1302. Limiting the search to the defendant's own statements would forbid guilty pleas in which the defendant denies culpability but concedes that the prosecutor can prove facts supporting a conviction. See *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Defendants may have a lot to gain from *Alford* pleas, and Rule 11 does not deny them those benefits by imprisoning them in their privileges.

Section 846, the conspiracy statute involved here, does not require the prosecutor to prove an overt act. *United States v. Sassi*, 966 F.2d 283 (7th Cir.1992). Thus Rule 11 is satisfied if the record provides a factual basis for concluding that Heard

agreed to distribute drugs (even if he did not in fact distribute any), or indeed that Heard agreed to promote the drug-distribution enterprise without himself making any of the retail sales. See generally *United States v. Lechuga,* 994 F.2d 346 (7th Cir.1993) (in banc).

The prosecutor told the district judge that two persons, Canary Smith and Edward Perryman, were willing to testify that Heard became a "worker" (i.e., a street vendor) in the drug ring, and that a third person would testify that he saw Heard carrying out this role. Smith and Perryman also would have testified that Heard did not last long as a retail seller; he was unreliable in paying for the drugs "fronted" to him and was cut off. Apparently Heard consumed too much of the cocaine provided to him, and so did not sell enough to cover his costs. As the prosecutor narrated the evidence, the government could prove that Heard asked Hightower for more cocaine to sell, but that Hightower was not cooperative. Heard's lawyer conceded in open court that the prosecutor could prove all of these things. Heard himself then spoke, minimizing his role:

THE COURT: Do you understand the government says that you agreed with some other people—namely Cleo Hightower, Eddie Mae Ivory, Robert Ivory, Theresa Jackson, Shawn Laird, and Betty Ann Berry—to possess cocaine with the intent to distribute it.

THE DEFENDANT: No I didn't know who they were.

THE COURT: That's what the government says you did.

THE DEFENDANT: Oh.

THE COURT: Do you understand that's what the government is saying in this Indictment, that you reached an agreement with some or all of these people to possess cocaine and cocaine base with the intent to distribute it.

THE DEFENDANT: Yeah, I understand.

\*　　\*　　\*　　\*　　\*　　\*

THE COURT: And, Mr. Heard, is there anything that you think [the prosecutor] could not prove at trial?

THE DEFENDANT: That I—that he [Hightower] was giving me, supplying me with some cocaine. Okay, like I was cleaning his vans and cars and stuff. And he would give me, you know, a couple bags. But I wasn't—he wasn't supplying me to sell cocaine.

THE COURT: You are saying that the government could only prove that Mr. Hightower gave you cocaine sort of as a form of payment for cleaning out his van?

THE DEFENDANT: Yes, ma'am.

THE COURT: But not enough for you to sell?

THE DEFENDANT: Well, yeah. I mean there was like a couple bags, you know, I could have sold, you know. But I wasn't— I wasn't—he wasn't giving me enough to sell to make a profit off of.

THE COURT: I am not sure I understand you. He gave you enough or he gave you enough cocaine that you could sell it. But you are saying he didn't give you enough that you could really make any money off of it.

THE DEFENDANT: Yes, ma'am.

THE COURT: Did you sell some of the cocaine that he gave you?

THE DEFENDANT: Well, once or twice I did. Once or twice I have sold it, a couple bags. But that I was mostly using it myself.

THE COURT: Mostly it was for your own use.

THE DEFENDANT: Yes, ma'am.

THE COURT: And is it your position that Cleo Hightower is the only person you dealt with?

THE DEFENDANT: Yes ma'am.

THE COURT: Did Eddie Mae Ivory ever give you any cocaine?

THE DEFENDANT: No, ma'am.

THE COURT: Or any of the others named in the conspiracy or in the Indictment?

THE DEFENDANT: I bought from just about everyone on there.

THE COURT: And did you buy just enough for your own use, or did you buy enough to sell to other people?

THE DEFENDANT: Just enough for my own use.

This colloquy is consistent with the prosecutor's description of the evidence: Heard agreed to sell cocaine for the drug enterprise, but Hightower did not supply Heard with enough for him to satisfy his habit and still make a profit. Heard added that to obtain drugs he acted as a common laborer for the drug ring. ("Okay, like I was cleaning his vans and cars and stuff.") Working for drugs could support a conviction for conspiracy, as it shows that Heard joined the enterprise and sought to promote its success. It may be that the colloquy in open court establishes only a conspiracy between Heard and Hightower, but that is quite sufficient for criminal liability.

AFFIRMED.

EISELE, Senior District Judge, dissenting.

With respect to Mr. Heard only, I respectfully dissent.

On appeal Mr. Heard contends that the record fails to demonstrate an adequate factual basis for his guilty plea and for the district judge's conclusion that his plea was knowingly and voluntarily made. The shortcomings, the appellant asserts, are in violation of F.R.Cr.P. 11.

The standard of review applied in a direct appeal of a conviction arising from a guilty plea is that noncompliance with Rule 11 constitutes reversible error. *United States v. Frazier*, 705 F.2d 903, 907 (7th Cir.1983). *See also United States v. DeCicco*, 899 F.2d 1531, 1534 (7th Cir.1990); *United States v. Fountain*, 777 F.2d 351, 355 (7th Cir.1985); *United States v. Fels*, 599 F.2d 142, 149 n. 5 (7th Cir.1979). Rule 11 serves the purpose of "making clear exactly what the defendant admits to, and whether the admissions are factually sufficient to constitute the alleged crime." *Fountain*, 777 F.2d at 355. Rule 11(f) requires the district court to determine whether there is a factual basis for a guilty plea before entering judgment. "It is well settled in this circuit that the failure of the defendant to admit to the factual basis of a plea is the equivalent of a plea of not guilty, that a 'district judge shall not *accept* a guilty

plea until he has determined that there is a factual basis for the plea.'" *United States v. Plisek*, 657 F.2d 920, 924 (7th Cir.1981) (quoting *United States v. Wetterlin*, 583 F.2d 346, 352–53 (7th Cir.1978), *cert. denied*, 439 U.S. 1127, 99 S.Ct. 1044, 59 L.Ed.2d 88 (1979) (emphasis in original)).

Rule 11(d) requires the court to inquire whether the defendant's willingness to plead guilty results from prior discussions between the U.S. Attorney and the defendant or his attorney. Subsection (f) of Rule 11 requires the Court to satisfy itself that there is a factual basis in the record.

At the beginning of the change of plea hearing, the following dialogue took place:

THE COURT: Would you look over Count I of the Indictment and then tell me in your own words what you understand the government says that you did?

    \*    \*    \*    \*    \*    \*

THE DEFENDANT: *That I sold cocaine.*

THE COURT: Do you understand the government says that you agreed with some other people—namely Cleo Hightower, Eddie Mae Ivory, Robert Ivory, Theresa Jackson, Shawn Laird, and Betty Ann Berry—to possess cocaine with the intent to distribute it.

THE DEFENDANT: *No, I didn't know who they were.*

THE COURT: That's what the government says you did.

THE DEFENDANT: Oh.

THE COURT: Do you understand that's what the government is saying in this Indictment, that you reached an agreement with some or all of these people to possess cocaine and cocaine base with the intent to distribute it.

THE DEFENDANT: Yeah, I understand.

THE COURT: Okay. You understand that the government says that you reached that agreement sometime between April of 1991 and October of 1991.

THE DEFENDANT: Yes, I understand that they are *saying* that, but I—

THE COURT: Okay. You understand that the government says that you reached

that agreement in the Western District of Wisconsin.

THE DEFENDANT: Yes.

(Transcript of Guilty Plea Hearing at 4–5) (emphasis added). The Court then questioned Mr. Heard to determine whether he understood the various rights that he would be giving up by pleading guilty. This was followed by the Court calling upon the government to state what it could have proven at trial. The government stated that it could prove that Mr. Heard sold cocaine and "gave a portion of the proceeds back to [Hightower and Ivory]." [1] (Guilty Plea Transcript at 11). The government put great stock in the expected testimony of one Canary Smith, who the government said would testify that "Mr. Heard himself, although apparently a user and in need of some cocaine base, *wanted to be a worker, wanted to sell cocaine base.*" (Guilty Plea Transcript at 12) (emphasis added). When asked whether there was anything that the government could not prove, Mr. Heard's testimony refuted the allegation of a conspiracy. The relevant parts of the colloquy are quoted as follows:

THE COURT: Is there anything that he stated that you think he could not prove at trial?

MR. GLICKMAN: No.

THE COURT: And, Mr. Heard, is there anything that you think Mr. Van Wagner could not prove at trial?

THE DEFENDANT: That I—that he was giving me, supplying me with some cocaine. Okay, like I was cleaning his vans and cars and stuff. And he would give me, you know, a couple bags. But I wasn't—he wasn't supplying me to sell cocaine.

THE COURT: You are saying that the government could only prove that Mr. Hightower gave you cocaine sort of as a form of payment for cleaning out his van?

THE DEFENDANT: Yes, ma'am.

THE COURT: But not enough for you to sell?

THE DEFENDANT: Well, yeah. I mean there was like a couple bags, you know, I

could have sold, you know. But I wasn't— I wasn't—he wasn't giving me enough to sell to make a profit off of.

THE COURT: I am not sure I understand you. He gave you enough or he gave you enough cocaine that you could sell it. But you are saying he didn't give you enough that you could really make any money off of it.

THE DEFENDANT: Yes, ma'am.

THE COURT: Did you sell some of the cocaine that he gave you?

THE DEFENDANT: Well, once or twice I did. Once or twice I have sold it, a couple bags. But that I was mostly using it myself.

THE COURT: Mostly it was for your own use.

THE DEFENDANT: Yes, ma'am.

THE COURT: And is it your position that Cleo Hightower is the only person you dealt with?

THE DEFENDANT: Yes, ma'am.

THE COURT: Did Eddie Mae Ivory ever give you any cocaine?

THE DEFENDANT: No, ma'am.

THE COURT: Or any of the others named in the conspiracy or in the Indictment?

THE DEFENDANT: I bought from just about everyone on there.

THE COURT: And did you buy just enough for your own use, or did you buy enough to sell to other people?

THE DEFENDANT: Just enough for my own use.

The appellant's answer indicates that the movement of cocaine from Hightower to Heard was a form of payment for services performed by appellant Heard. And Heard's statement at the time his plea was taken suggests that the cocaine was not moved with the knowledge or intent that it be sold. The dialogue also suggests that the expectation was that appellant Heard would consume the cocaine. There is no admission of, or even any indication of, an agreement between

---

**1.** There was no elaboration on this point. It is not clear whether the "portion of the proceeds" would have represented any profit for the con-

spiracy, or whether Mr. Heard was simply buying more cocaine for his personal use.

Hightower and Heard concerning the distribution or sale of cocaine. In fact, appellant Heard is specifically denying such a relationship.

After Mr. Heard's statements, the Court again asked whether the government could establish that Mr. Heard was actually a member of a conspiracy. The government said that Canary Smith would testify to having heard Mr. Heard ask Cleo Hightower for more work.[2] The government stated that Mr. Heard "was aware" of the conspiracy. The government also observed that Heard was only "involved slightly at the beginning at a time when the operation hadn't 'cranked up' so to speak." After hearing the Assistant U.S. Attorney, the Court, without further addressing Heard, stated that it was satisfied that there was a factual basis for the plea and concluded that the defendant entered his plea knowingly and voluntarily and with an understanding of the nature of the charge.[3] Heard was sentenced to a term of imprisonment of 33 months to be followed by a term of five years of supervised release.

For "a guilty plea to be valid normally it must have a basis in fact and the defendant must admit to this basis in fact." *United States v. Frye*, 738 F.2d 196, 199 (7th Cir. 1984). The majority correctly notes that there are exceptions to this general rule, and that under certain circumstances a defendant may deny his guilt, but decide that the evidence of his guilt is such that it is in his best interest to plead guilty. The Supreme Court has clearly stated that the constitutional requirements for acceptance of a guilty plea are that the plea represent a "voluntary and intelligent choice among the alternative courses of action open to the defendant," and that the defendant need not admit guilt to enter a valid guilty plea. *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970). There is no indication that this was a so-called "Alford plea" and it

is far from clear that this defendant made such a voluntary and intelligent choice among the alternative courses of action open to him. It is not clear that he was aware that there was a difference between a buyer-seller relationship and joining a conspiracy, or that he was aware that guilt of possession or distribution did not necessarily mean guilt of conspiracy. Indeed, the trial court's treatment of his responses could have led him to believe that there was no meaningful distinction.

The appellant's answers to the questioning at the plea hearing are not examples of "agreeing to agree" to the facts set forth by the government, but instead represent denials of involvement in a conspiracy, although clearly acknowledging possession, and one or two occasions of distribution. Mr. Heard specifically denies having joined a "conspiracy" to distribute. Of course, under a conspiracy theory, Mr. Heard could be held accountable for the illegal activities of all members of the alleged conspiracy during the time period in which he was a member of the conspiracy. Under a simple possession/distribution theory, he could be held accountable only for his own criminal conduct. Thus, this point is certainly not an academic one.

This Circuit has had occasion to address the definition of a conspiracy before. *See, e.g., United States v. Sababu*, 891 F.2d 1308, 1322 (7th Cir.1989) ("If there is 'one over-all agreement among the various parties to perform different functions in order to carry out the objectives of the conspiracy, the agreement among the parties constitutes a single conspiracy.'" (quoting *United States v. Varelli*, 407 F.2d 735, 742 (7th Cir.1969), *cert. denied*, 405 U.S. 1040, 92 S.Ct. 1311, 31 L.Ed.2d 581 (1972)). The key question is "whether the conspirators are performing different functions in pursuit of common

---

2. In light of the undisputed testimony that Mr. Heard was cleaning Mr. Hightower's vans and cars, Canary Smith's expected testimony sheds little light on what type of work Mr. Heard was seeking.

3. The majority notes that, as part of the plea bargain, the prosecutor stipulated that Heard did not anticipate that the other conspirators would

distribute more than 5 grams of crack, enabling Heard to escape the mandatory minimum penalty. After thoroughly reviewing the record, especially the transcript of the sentencing, I find no basis for the implication that Mr. Heard manipulated the prosecutor by locking him into a concession at the plea stage and then attempting to renege.

criminal objectives.") This Circuit has also long recognized the difference between a conspiracy and a simple buyer-seller relationship. We have stated that, in the context of a drug distribution relationship, mere knowledge of the "hub's" activities, or those of the other spokes, is not enough to tie the conspiracy together. *United States v. Townsend,* 924 F.2d 1385, 1391 (7th Cir.1991). "(W)hen dealer A sells drugs to dealer B, we don't presume that A has agreed to work for the benefit of everyone else with whom B deals, or that A benefits from B's other deals. If A knows of, and benefits from, B's subsequent distribution, we may infer a limited agreement to distribute between A and B." *Id.* at 1392. It is clear that the reverse would also be true: Simply from the circumstance that dealer B buys from dealer A, we do not presume that B has agreed to work for the benefit of everyone else with whom A deals, or that B benefits from A's other deals. In spite of the majority's contention, Heard never admitted to selling cocaine base *for* the drug enterprise, or to acting as a common laborer *for* the drug ring. He admitted to buying from Hightower, cleaning vans for Hightower, and selling "once or twice" on his own. This is not an admission to joining a conspiracy.

I believe that the majority opinion impermissibly intertwines two different strands of law: acceptance of a "normal" guilty plea and acceptance of an *Alford,* or "I didn't do it, but I want to plead guilty anyway" plea. Acceptance of an ordinary guilty plea requires the district judge to find a *factual* basis for the plea, and I believe that it requires the defendant to admit to this basis in fact, or at least to "agree to agree" to the government's proffer. *See Frye,* 738 F.2d at 199. If the defendant *denies* his guilt, in the face of the government's asserted factual basis, the Court is no longer faced with the ordinary guilty plea. It is faced with either a case which needs to go to trial, or a possible *Alford* plea. In order for there to be a valid *Alford* plea, the Court must establish that the defendant has a full understanding of the elements of his alleged crime and, with that knowledge, has made a knowing and voluntary decision to plead guilty in spite of his asserted innocence to avoid the possibility of more severe penalties at trial.

The majority cites *United States v. Musa,* 946 F.2d 1297, 1302 (7th Cir.1991) to support the argument that a judge may find the factual basis "from anything that appears on the record ... which includes the government's proffer." *Id.* (citations omitted). This language was directly followed by a discussion of *Alford* pleas. *Id.* Furthermore, in *Musa,* the defendant began by suggesting that he wanted to enter an *Alford* plea, but ended by specifically admitting to the elements of the charged conspiracy. *Id.* I do not believe that a district judge may accept a guilty plea based solely upon the government's proffer unless it is clearly an *Alford* plea. This was not an *Alford* plea, and in light of the defendant's specific denial of the elements of the charged conspiracy, it was error to accept a plea of guilty. The district court did not fully satisfy the Rule 11 requirements. Therefore, I would vacate Mr. Heard's guilty plea and remand to the district court for further proceedings.