28 F.3d 1217
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff/Appellee,
v.
Steve MORRELL, Defendant/Appellant.
 No. 93-3995.
 United States Court of Appeals, Seventh Circuit.
 Argued June 7, 1994.
Decided July 14, 1994.
 
 Before CUMMINGS, ALARCON* and EASTERBROOK, Circuit Judges.
 
 ORDER
 
 1
 Steve Morrell appeals from the district court's resentencing after his judgment of conviction for conspiracy to possess with the intent to distribute and to distribute a quantity greater than one kilogram of methamphetamine. 21 U.S.C. Secs. 841(a)(1) and 846. Morrell contends that the district court erred at resentencing because (1) the district court held him accountable for purchasing and distributing type d-methamphetamine ("type d") when the Government failed to introduce sufficient evidence to support this finding, (2) the district court held him accountable for fifteen pounds of methamphetamine seized on August 31, 1990 and two pounds of methamphetamine that he purchased between late 1986 and 1990, when the evidence failed to demonstrate that these transactions were part of the charged conspiracy, and (3) the district court failed to state the reasons for imposing its sentence, as required by 18 U.S.C. Sec. 3553(c). We affirm because we find no merit to any of Morrell's contentions.
 
 I. BACKGROUND
 
 2
 The evidence showed the existence of a conspiracy between 1985 and 1990 to distribute methamphetamine in Evansville, Indiana, and Little Rock, Arkansas. Approximately sixty to eighty pounds of methamphetamine were distributed in furtherance of the conspiracy during this period. Robert Westling, Darryl Taylor, Robert Willingham and Steve Morrell were members of the conspiracy. In 1985, Westling agreed to supply methamphetamine to Taylor. At this time, Morrell was one of the primary distributors for the conspiracy. Additional details regarding the conspiracy are set forth in United States v. DePriest, 6 F.3d 1201, 1204-06 (7th Cir.1993).
 
 
 3
 The district court found that under the Sentencing Guidelines, Morrell was accountable for: (1) seven pounds of methamphetamine he distributed between 1985 and 1987; (2) two pounds of methamphetamine Morrell purchased from Willingham between late 1986 and 1990; and (3) a fifteen pound shipment that was to be delivered on August 31, 1990, from which Morrell was promised a "couple of pounds."
 
 
 4
 On August 31, 1992, the district court sentenced Morrell to a term of 262 months of imprisonment based on the entire sixty to eighty pounds of methamphetamine involved in the conspiracy. This term was at the low end of the applicable guideline range. Morrell appealed, and on September 21, 1993, we vacated his sentence and remanded the case for resentencing to determine the amount of methamphetamine that he should be held accountable for under the Sentencing Guidelines. Id. at 1214. At the resentencing hearing, the district court held Morrell accountable for twenty-four pounds of type d. The court reimposed the prior 262 month sentence, representing the high end of the applicable guideline range.
 
 II. ANALYSIS
 A.
 
 5
 Morrell contends that the district court clearly erred when it determined that all twenty-four pounds of methamphetamine were type d. We review a district court's factual findings for clear error. United States v. Villarreal, 977 F.2d 1077, 1080 (7th Cir.1992).
 
 
 6
 On August 31, 1990, agents from the Drug Enforcement Administration ("DEA") seized fifteen pounds of methamphetamine. The methamphetamine was tested and determined to be type d. Morrell does not contest the court's finding that this shipment was type d. Morrell contends, however, that the Government failed to demonstrate that the two pounds he purchased from Willingham and the seven pounds he distributed between 1985 and 1987 were type d.
 
 
 7
 At resentencing, DEA Special Agent Thomas Casey testified that Willingham had told him that Morrell had cut the methamphetamine he purchased from Willingham between late 1986 and 1990. During this period, Morrell purchased two pounds of methamphetamine from Willingham. Willingham also sold Morrell vita-blend, which is used to cut methamphetamine. Special Agent Casey also testified that type l-methamphetamine ("typ l") would not be cut because "l-methamphetamine is a very, very, very non-potent methamphetamine" and "if it was diluted it would not be useful on the street." Thus, the evidence is sufficient to support an inference that the two pounds of methamphetamine Morrell purchased from Willingham were type d.
 
 
 8
 Additionally, there is sufficient circumstantial evidence in the record to establish that the seven pounds of methamphetamine distributed between 1985 to 1987 were type d. First, all of the methamphetamine was supplied by Westling to Taylor. Taylor had an agreement with Westling that the methamphetamine he supplied would not be cut before it was delivered. Taylor testified that he instructed other members of the conspiracy regarding the proper manner in which to cut methamphetamine. This evidence supports an inference that the members of the conspiracy cut the methamphetamine after Taylor received it. Second, as DEA Special Agent Casey testified, it would not be economical to cut type l. If type l is cut three times it would be too diluted to be profitable. This evidence supports the district court's finding that the seven pounds of methamphetamine were type d.
 
 B.
 
 9
 Morrell contends that the district court clearly erred when it found that he was accountable under the Sentencing Guidelines for the fifteen pounds of type d seized on August 30, 1990, and the two pounds of type d that he purchased from Willingham between late 1986 and 1990. We disagree.
 
 
 10
 Under the Sentencing Guidelines, a defendant may be held accountable for conduct that the "defendant counseled, commanded, induced, procured, or wilfully caused." United States Sentencing Guidelines ("U.S.S.G.") Sec. 1B1.3, app. note 1. The application note further states: "[I]n the case of criminal activity undertaken in concert with others, whether or not charged as a conspiracy, the conduct for which the defendant 'would otherwise be accountable' also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant." Id. As we explained in United States v. Edwards, 945 F.2d 1387 (7th Cir.1991), in order for a defendant to be held accountable for the acts of a co-conspirator under section 1B1.3, the Government must establish that a defendant's conduct was committed in furtherance of the conspiracy and reasonably foreseeable. Id. at 1392.
 
 
 11
 In Edwards, members of an ongoing conspiracy distributed heroin over a three year period. Id. at 1389. The district court sentenced all members of the conspiracy based upon the entire amount of heroin which was distributed during the conspiracy. Id. at 1391. We reasoned that in determining the appropriate sentence under section 1B1.3, "the district court may be guided by conspiracy law in considering which conduct is relevant for sentencing purposes." Id. at 1392 (citing Pinkerton v. United States, 328 U.S. 640, 646-67 (1946)). In Pinkerton, the Supreme Court held that a defendant is liable for acts committed by a coconspirator if the acts were in furtherance of the conspiracy and were reasonably foreseeable. Pinkerton, 328 U.S. at 647-48.
 
 
 12
 In his initial appeal, we upheld Morrell's conviction as a member of the charged conspiracy from 1985 to 1990. United States v. DePriest, 6 F.3d 1201, 1206-07 (7th Cir.1993). At resentencing, the district court found that Morrell was accountable for the fifteen pound shipment because "Morrell found out by some means that Taylor had received this shipment and the [j]ury found that Morrell was still a part of this conspiracy at the time and thus, the [c]ourt could find that ... [it] was reasonably foreseeable to Morrell." The court found that Morrell was accountable for the two pounds because "Willingham testified that after he became a dealer, he sold a couple of pounds of methamphetamine to Morrell. This amount may also reasonably be attributable to Morrell."
 
 
 13
 The record indicates that on August 30, 1990, Morrell went to Taylor's home. Morrell informed Taylor that he was aware that Taylor was expecting a large shipment of methamphetamine. Morrell requested that Taylor give him several pounds of the shipment. Morrell's participation in the distribution of this shipment of methamphetamine was a reasonably foreseeable act in furtherance of the conspiracy to distribute methamphetamine. Morrell did not demonstrate that he had withdrawn from the conspiracy prior to August 30, 1990. Thus, the district court did not err when it found Morrell accountable under the Sentencing Guidelines for the fifteen pound shipment. The court's finding of accountability is consistent with section 1B1.3 of the Sentencing Guidelines and our decision in Edwards.
 
 
 14
 Similarly, there is no merit to Morrell's contention that he should not be held accountable for the two pounds of methamphetamine he purchased from Willingham. Morrell made this purchase while he was still a member of the conspiracy to distribute methamphetamine. The district court did not clearly err when it held Morrell accountable for the quantity of methamphetamine which was transferred from Willingham to Morrell in furtherance of the conspiracy.
 
 C.
 
 15
 Morrell contends that the district court failed at resentencing to state adequate reasons for imposing a 262 month sentence. The record shows the following colloquy between the court and counsel:
 
 
 16
 THE COURT: By the nature and circumstances of this offense and the history and characteristics of the defendant, the Court feels this is a proper sentence and resentencing under the decision by the Seventh Circuit, because of the seriousness of the offense and his culpability and it is within the guidelines. Does counsel know of any reasons why sentence should not be imposed?
 
 
 17
 MS. CONOUR: The Government has none, Your Honor.
 
 
 18
 THE COURT: Do you have any legal objections, Mr. Lamont?
 
 
 19
 MR. LAMONT: No, Your Honor.
 
 
 20
 By stating that he had no legal objections to the sentence, Morrell's counsel waived his right to require the district court to provide a more detailed justification for the sentence it imposed. See United States v. Caicedo, 937 F.2d 1227, 1236 (7th Cir.1991) (the requirement of a statement of reasons is waived by failure to raise the issue at sentencing). Therefore, we review this contention for plain error. United States v. Heilprin, 910 F.2d 471, 474 (7th Cir.1990).
 
 
 21
 In United States v. Olano, 113 S.Ct. 1770 (1993), the Supreme Court clarified the standard for plain error review under Rule 52(b) of the Federal Rules of Criminal Procedure. The Court explained that in order for an appellate court to find the existence of plain error, the error must affect "substantial rights." Id. at 1777-78. The "error must have been prejudicial: It must have affected the outcome of the District Court proceedings." Id. at 1778.
 
 
 22
 Morrell does not acknowledge that he is required to establish that the district court committed plain error. Rather, he merely "asserts that the reason for resentencing him to the maximum requires more than the feelings of the District Court." Morrell has failed to offer any evidence which demonstrates that he was prejudiced by the district court's limited explanation of the reasons for the imposition of its sentence. Accordingly, he has failed to demonstrate plain error.
 
 
 23
 AFFIRMED.
 
 
 
 *
 Honorable Arthur L. Alarcon, Senior Circuit Judge for the Ninth Circuit, sitting by designation