14 F.3d 605
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Olga CARDENAS and Luis Martinez, Defendants-Appellants.
 Nos. 92-4059, 93-1649.
 United States Court of Appeals, Seventh Circuit.
 Argued Nov. 2, 1993.*
Decided Jan. 10, 1994.
 
 Before WOOD, Jr., CUDAHY and MANION, Circuit Judges.
 
 ORDER
 
 1
 Olga Cardenas and Luis Martinez were each indicted for one count of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. Sec. 846 and one count of attempt to possess with intent to distribute cocaine in violation of 18 U.S.C. Sec. 2. Cardenas pleaded guilty and was sentenced to 70 months' incarceration. A jury convicted Martinez, and he too received a sentence of 70 months. On appeal Cardenas argues that the district court erred in basing her sentence on a finding that the crime involved four kilograms of cocaine. Martinez argues that the evidence was insufficient to support the jury's verdicts on the conspiracy and attempt charges. He also contends that the district court erred in denying him a two-point reduction for acceptance of responsibility. We affirm the district court.
 
 I. Background
 
 2
 Roberto Sanches, an informant working with the Drug Enforcement Administration ("DEA"), testified at Martinez's trial as follows. On March 21, 1992, Sanches met with defendant Olga Cardenas and another woman named Chayo to negotiate a drug deal. Cardenas agreed to buy four kilograms of cocaine at a price of $16,500 per kilogram. Between March 27, 1992 and April 1, 1992, Sanches spoke with Cardenas both on the telephone and in person. Cardenas initially informed Sanches that she wanted to purchase five kilograms of cocaine, but later told Sanches that she only wanted two kilograms. She again changed her mind and requested four kilograms; she wanted to pay for two and take two on credit. Sanches and Cardenas arranged for the deal to take place on April 1, 1992 at a restaurant called Aguas Calientes.
 
 
 3
 On April 1, 1992, Sanches called Cardenas from the Chicago DEA office and told her that he was on his way to Chicago with the four kilograms of cocaine and would be there in about an hour. Approximately one and a half hours later Sanches called Cardenas and told her that he had had car problems but would be at Aguas Calientes in about fifteen to twenty minutes. After this conversation, Sanches and Agent Rafael Tovar, a DEA officer assisting in the sting, drove to Aguas Calientes in Tovar's car. Another agent assisting in the sting, Fred Guerra, followed in his own car.
 
 
 4
 Upon arriving Sanches and Tovar went inside the restaurant and ordered some food. Sanches then went outside to look for Cardenas. Cardenas arrived shortly thereafter and Sanches went over to her car. Sanches was wearing a recording device which recorded their conversation. A transcript of this conversation was admitted into evidence during the trial. When Cardenas arrived at Sanches' car, she asked him if he had the cocaine. He replied "yes, it's in the other car," indicating Agent Guerra's car. Cardenas told Sanches that she only had enough money for one kilogram of cocaine, but a man was bringing money for the second kilogram. While they waited for the additional money, Cardenas gave Sanches the money for one kilogram. She also explained that she had beeped the man with the money and had told him to hurry up, so they should wait about fifteen minutes for the money. She further explained that the man bringing the money would drop it off with another man who was waiting in a black pickup truck in the Aldi parking lot.
 
 
 5
 Cardenas left the Aguas Calientes' parking lot, followed by DEA surveillance agents Charles A. Banks and James Walsh. Banks testified that Cardenas initially drove to the Aldi parking lot, left briefly to make a call from a phone booth in another parking lot and then returned. Banks further testified that a black pickup truck finally arrived. There were three persons in the truck, Luis Martinez, Johnny Hernandez and Martin Mendoza. Cardenas approached the driver's side of the truck and had a brief conversation with the truck's occupants before returning to her car. Agent Tovar, who had also followed Cardenas when she left Aguas Calientes, corroborated Agent Bank's testimony. Tovar further testified that after Cardenas left the black pickup, Martinez, who was driving the truck, got out and let the middle passenger, Mendoza, out. Martinez then got back into the truck and left the lot. Mendoza went and waited in Cardenas' car while Cardenas talked to Agents Tovar and Guerra in Guerra's car. This conversation was recorded by Agent Tovar and a transcript was admitted at trial. The transcript of this conversation and Agent Tovar's testimony concerning this conversation revealed that Cardenas told Tovar the she still did not have the additional money but that the men in the black pickup were going to look for it. Mendoza told Tovar that the men in the pickup were going to find out what happened to the money. Cardenas further explained that the occupants of the truck had previously brought the money which she had already given him for the first kilogram of cocaine.
 
 
 6
 While this conversation transpired, the surveillance agents continued to watch the black pickup truck. The surveillance agents observed the black truck as it left Aldi's lot and entered a Mobil gas station. Only Hernandez and Martinez were in the truck at this time. After waiting a few minutes, the truck then returned to the Aldi parking lot. Mendoza and Tovar approached the truck. Mendoza told Tovar, who was at the driver's side window, that the guys were not around and that they would have to just take the one kilogram of cocaine that they had already paid for. Agent Tovar then asked, "Okay, he's not there?" Martinez replied, "No he isn't." Martinez then said they would take "just the one." Hernandez repeated this stating, "yeah, just the one." The agents then arrested Mendoza, Martinez, Cardenas, and Hernandez charging them with conspiracy to knowingly and intentionally possess, with intent to distribute four kilograms cocaine and attempting to possess, with intent to distribute, four kilograms of cocaine. Eventually, Cardenas and Mendoza pleaded guilty. Martinez and Hernandez went to trial. Martinez was found guilty on both counts and Hernandez was acquitted on both counts. Both Cardenas and Martinez were sentenced to 70 months imprisonment.
 
 II. Analysis
 Luis Martinez
 
 7
 Martinez raises two arguments on appeal. First, he claims that the evidence was insufficient to prove that he either conspired or attempted to possess with intent to distribute cocaine. Second, Martinez asserts that the court erred in refusing to grant him a two-point reduction for acceptance of responsibility.
 
 A. Sufficiency of Evidence
 
 8
 Martinez argues that the evidence was insufficient to convict him of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. Sec. 846 and attempt to possess with intent to distribute cocaine in violation of 18 U.S.C. 2. "A defendant challenging a conviction on the ground of insufficient evidence bears a heavy burden." United States v. Brown, 92-1971, slip op. at 14 (Oct. 15, 1993). We "review all the evidence and all the reasonable inferences that can be drawn from the evidence in the light most favorable to the government." United States v. Nesbitt, 852 F.2d 1502, 1509 (7th Cir.1988), quoting United States v. Pritchard, 745 F.2d 1112, 1122 (7th Cir.1984), cert. denied, 109 S.Ct. 808 (1989). "We must uphold [Martinez's] conviction if the evidence, when viewed in this light, establishes that 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " Brown, slip op. at 14, quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979). We may not reweigh the evidence or reassess the credibility of witnesses. Brown, slip op. at 14, citing United States v. Ramirez, 796 F.2d 212, 214 (7th Cir.1986). Accordingly, we may only overturn the verdict if "the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." United States v. Briscoe, 896 F.2d 1476, 1504 (7th Cir.1990) (internal quotation omitted).
 
 
 9
 To prove conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. Sec. 846 the government was required to prove the existence of a conspiracy and the defendant's participation in the conspiracy. United States v. Durrive, 902 F.2d 1221, 1225 (7th Cir.1990). Martinez does not dispute the existence of a conspiracy. Rather he claims that the evidence was insufficient to show that he was a member of the conspiracy. We disagree.
 
 
 10
 "A conspiracy conviction may be based on circumstantial evidence." United States v. CEA, 914 F.2d 881, 886 (7th Cir.1990). The evidence adduced at trial circumstantially established that Martinez was involved in the conspiracy as the money man.[1] Specifically, Cardenas told Sanches that Martinez had given her the money for the first kilogram of cocaine and was in the process of getting the money for the second kilogram. Mendoza also had stated that Martinez was looking for the man with the second kilogram. Most persuasive was Agent Tovar's testimony concerning his conversation with Martinez after he returned from his search for the man with the additional money. Mendoza told Agent Tovar that the "guys were not around" and they would have to just take the one kilogram of cocaine that they had already paid for.
 
 
 11
 Martinez responds by claiming that this evidence can only establish an association with Mendoza and Cardenas and evidence of "mere association with conspirators, knowledge of a conspiracy, and presence during conspiratorial discussions" is insufficient." United States v. Percival, 756 F.2d 600, 610 (7th Cir.1985). "[W]hile presence alone is not enough to convict, 'presence or a single act will suffice ... if the circumstances permit the inference that the presence or act was intended to advance the ends of the conspiracy.' " United States v. Pazos, 993 F.2d 136, 140 (7th Cir.1993), quoting United States v. Binkley, 903 F.2d 1130, 1134 (7th Cir.1990). The above evidence of Martinez's actions creates just such an inference. In fact, Martinez acknowledges that Tovar's testimony that he said "just give us the one" arguably establishes knowledge and participation. Martinez claims, however, that Officer Tovar's testimony lacks credibility. "As an appellate court, we 'will not reweigh the evidence or judge the credibility of witnesses when reviewing the sufficiency of the evidence.' " United States v. Nururdin, No. 92-2756, slip op. at 13 (7th Cir. Nov. 3, 1993), quoting United States v. Reed, Nos. 90-1263 and 92-1333, slip op. at 4 (7th Cir. Aug. 12, 1993). Accordingly, we hold that sufficient evidence supports the jury's conclusion that Martinez conspired to possess cocaine with intent to distribute.
 
 
 12
 Martinez also argues that the evidence was insufficient to support his conviction on count two--attempt to possess with intent to distribute cocaine. "This charge requires proof that [Martinez] acted with specific intent to commit the underlying offense, and in addition took a substantial step toward its completion." United States v. CEA, 914 F.2d 881, 887 (7th Cir.1990). Martinez does not challenge the completion of a substantial step. Rather he claims that he did not act with the specific intent to commit the underlying crime. As demonstrated above, however, the evidence was sufficient for a jury to have reasonably concluded that Martinez intended to possess cocaine with intent to distribute. Thus, Martinez had the specific intent to commit the underlying crime. Accordingly, we hold that sufficient evidence also existed to convict Martinez of attempt to possession with intent to distribute cocaine.
 
 B. Acceptance of Responsibility
 
 13
 Martinez also contends that the district court erred in calculating his sentence when it denied him a two-point reduction for acceptance of responsibility. Section 3E1.1(a) of the Sentencing Guidelines in effect at the time that Martinez was sentenced provides that "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels." U.S.S.G. 3E1.1(a). "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." U.S.S.G. 3E1.1, comment. (n. 5). Therefore, we will uphold a district court's determination of unless it constitutes clear error. United States v. Jordan, 890 F.2d 968, 972 (7th Cir.1989).
 
 
 14
 Martinez argues that he is entitled to a reduction because he admitted that he brought Mendoza and the drug money to the parking lot where the drug transaction was occurring. He claims, however, that he did not know that a drug deal was taking place and that as soon as he realized what was going on, he abandoned his involvement. Thus, at no time did Martinez admit that he knowingly and intentionally carried out the crimes for which he was convicted. A denial for acceptance of responsibility is appropriate when the defendant denies the essential factual elements of his guilt. United State v. Agrell, 965 F.2d 222, 228 (7th Cir.1992). Martinez also attempted to minimize his involvement by claiming his participation was caused by concern for his girlfriend's child. Martinez's "grudging and incomplete admission, accompanied by an excuse to minimize his own culpability, does not indicate acceptance of responsibility." United States v. Aquilla, 976 F.2d 1044, 1053 (7th Cir.1992). Accordingly, we hold that the court did not clearly error in denying Martinez a two-point reduction for acceptance of responsibility.
 
 Olga Cardenas
 
 15
 Cardenas was convicted, pursuant to a guilty plea, of conspiracy to possess with intent to distribute cocaine and attempt to possess with intent to distribute cocaine. At the sentencing hearing, the court sentenced Cardenas to 70 months' incarceration on a finding that her crime involved four kilograms of cocaine. Cardenas argues on appeal that the district court erred because she only intended to possess two kilograms of cocaine.
 
 
 16
 In reviewing a sentencing court's determination of the quantity of drugs involved in a drug offense, we give great deference to the sentencing court's factual findings. United States v. Rossy, 953 F.2d 321, 325 (7th Cir.1992), cert. denied, 112 S.Ct. 1240 (1992); United States v. Buggs, 904 F.2d 1070, 1078 (7th Cir.1990). We will uphold such findings unless they are clearly erroneous. Rossy, 953 F.2d at 325; Buggs, 904 F.2d at 1078.
 
 
 17
 The district court was not clearly erroneous in determining the amount of cocaine involved to be four kilograms. The evidence demonstrates that Cardenas sought to purchase four kilograms of cocaine. For example, Sanches testified that Cardenas had ask him if she could pay for two kilograms of cocaine up front and take the other two on credit. Sanches also testified that he had agreed to leave the four kilograms of cocaine with her and asked her when she thought she would give him the money for the other kilograms. Cardenas replied, "I could give it at the very latest on Monday. Without fail." Tovar also testified that Mendoza stated that "we wanted to buy--I--I would--would take four." This evidence demonstrates that the court was not clearly erroneous in calculating the cocaine involved at four kilograms.
 
 
 18
 Moreover, even if the district court had erred, any error was harmless. Error is harmless if the judge states that he would impose the same sentence even if he accepted the defendant's sentencing calculations. United States v. Mount, 966 F.2d 262, 265 (7th Cir.1992). In this case, the sentencing judge did just that, stating:
 
 
 19
 As I indicated this morning, whether it is two kilograms or four kilograms, the sentencing range on the basis of two kilograms is 53 to 70 months, (sic)[2] and the range for four kilograms is 70 to 87 months. They have a common number; it is 70 months. It happens to be the top of one and the bottom of the other. It is my sentence in this case, based upon what I ascertain to be the cocaine involved, namely, four kilograms of cocaine, that I am sentencing this defendant to 70 months custody of the Attorney General. In the event that somebody disagree with my findings about two kilograms of cocaine, I wills serve notice right now as I did this morning, it's going to be the same 70 months, because I think that is appropriate for the conduct that the defendant has engaged in here.
 
 
 20
 Accordingly, even if the sentencing judge had improperly calculated the cocaine involved at 4 kilograms, we need not remand because the error would be harmless.
 
 III. Conclusion
 
 21
 For the foregoing reasons, we affirm.
 
 
 
 *
 Appeal No. 92-4059, USA v. Olga Cardenas, was submitted on the briefs and record without oral argument
 
 
 [1]
 On appeal, in arguing that the evidence was insufficient to support conviction, Martinez also argues that some of the evidence was inadmissible. Specifically, Martinez claims that the testimony of his coconspirators was inadmissible hearsay because he was not a coconspirator. Martinez failed to object to the government's pretrial proffer of these statements and he also failed to object to their introduction at trial. Therefore, Martinez has forfeited his claim. United States v. Olano, 113 S.Ct. 1770 (1993). Accordingly, we review for plain error only. Id. No error occurred, much less plain error, because the evidence established that Martinez was a member of the conspiracy
 
 
 [2]
 The actual sentencing range for two kilograms is 57-71 months